**Jimmy Dale MILLER, Plaintiff–Appellant,**

v.

**Jeanne CAMPANELLA, et al., Defendants–Appellees.**

No. 14–1990.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2015.

Decided July 27, 2015.

Jimmy D. Miller, Chicago, IL, pro se.

Frank Henry Bieszczat, Office of the Attorney General, Chicago, IL, Timothy Patrick Dugan, Sandberg Phoenix & Von Gontard P.C., St. Louis, MO, for Defendants–Appellees.

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

POSNER, Circuit Judge.

Before us is an appeal by an inmate at Lawrence Correctional Center (an Illinois state prison) named Miller who has sued medical and administrative personnel at the prison under 42 U.S.C. § 1983, claiming that they were deliberately indifferent to his gastroesophageal reflux disease (GERD), which can cause severe heartburn. Serious forms of the disease are commonly treated with a drug called ranitidine, which is commonly sold under the trade name "Zantac." (In the district court Miller also complained that prison personnel were deliberately indifferent to a skin infection that he has, but he doesn't pursue the issue in his appeal.) The district court granted summary judgment in favor of the defendants.

When Miller arrived at the prison in November 2010 (a transferee from a different Illinois prison), he had been taking Zantac for his GERD, but his prescription had expired. At his intake screening on

the day of his arrival he told the screener that he suffers from GERD and that he takes a prescription medication for it. Shortly afterward, at an orientation program for new inmates, he told the director of nursing that he wanted his prescription for Zantac renewed. According to Miller, she did nothing. A month later he saw another nurse, who scheduled him to see a doctor the following day, but the appointment was cancelled because the prison was on lockdown, during which prisoners are permitted to see doctors only in emergencies. It was four weeks before he was seen by one. A guard whom he told that he needed to see a doctor replied that he should file a grievance, which he did. Though he marked it "emergency," the warden, who reviewed the grievance, determined that it was not an emergency, which meant that it would be resolved through the normal grievance procedure and therefore Miller could not see a doctor until the lockdown ended. The warden is not a doctor, and so far as appears did not consult a doctor before deciding there was no emergency.

It was two months after Miller's arrival at the prison before he was allowed to see a doctor. During that period he complained repeatedly to the nursing staff about his GERD symptoms, but to no avail. On one occasion during this period, upon vomiting stomach acid he pressed the emergency button in his cell and a guard responded and told Miller "you are not bleeding, you are not dead, you are talking to me, so it can't be an emergency." Later that morning he was able to tell a nurse about his vomiting; her response was that she would check his chart. Nothing came of that. When at last he was seen by the doctor, the doctor renewed his prescription for Zantac.

The district judge ruled that the delay in renewing Miller's prescription was one month rather than two months. Without explanation the judge calculated the delay from the first scheduled doctor's appointment (on December 29, 2010) to the time that Miller finally saw a doctor, rather than beginning with Miller's first requests for Zantac in late November. The judge's reasoning was that Miller's first appointment with a doctor (later cancelled because of the lockdown) was for a month after he arrived at the prison, and he could not expect to get his prescription renewed before he saw the doctor. That misses an essential point. Zantac is both an over-the-counter drug (for Zantac pills containing only 75 to 150 milligrams of ranitidine) and a prescription drug (for 300–milligram pills). *QualityPrescriptionDrugs,* "Zantac: Over the Counter, or Prescription?" November 18, 2011, www.quality prescriptiondrugs.com/blog/2011/11/zantac-counter-prescription.html (visited July 25, 2015, as were the other web-sites cited in this opinion); *MedicineNet,* "Ranitidine, Zantac," www.medicinenet.com/ranitidine/article.htm. Because of the severity of his condition, Miller takes the 300–milligram pill; hence the prescription. Some types of nurse, such as nurse practitioners, are authorized to write prescriptions, others not; it's unclear whether any of the prison nurses had authority to give Miller 150–milligram Zantac pills, two of which equate to one 300–milligram pill. It's true that a Dr. James Fenoglio stated that inmates are not permitted to obtain Zantac unless a doctor prescribes it. But he may not be completely reliable. He was a defendant in another recent suit by an inmate at Lawrence Correctional Center, and we held that the inmate plaintiff had stated a claim against Dr. Fenoglio for unreasonable delay in treatment. *Perez v. Fenoglio,* 792 F.3d 768, 774–76, 777–80 (7th Cir. 2015). And in any event why, merely because a prison is on lockdown, can't a

prisoner see a doctor except in an emergency? That has not been explained.

GERD can, and so far as appears in the case of Miller does, produce persistent, agonizing pain and discomfort. It can also produce "serious complications. Esophagitis can occur as a result of too much stomach acid in the esophagus. Esophagitis may cause esophageal bleeding or ulcers. In addition, a narrowing or stricture of the esophagus may occur from chronic scarring. Some people develop a condition known as Barrett's esophagus. This condition can increase the risk of esophageal cancer." *WebMD, Heartburn/GERD Health Center,* "What Are the Complications of Long–Term GERD?" www.webmd.com/heartburn–gerd/guide/reflux–disease–gerd–1?page=4. The judge said in his opinion that one month "is a short amount of time [elsewhere he calls it a 'short delay'] to be treated for heartburn/GERD," but he gave no reason for that medical speculation.

 The plaintiff claims that the pain he experienced from his GERD was "so intense that he was not able to sleep at night. [He] felt like his insides were being pushed out, and this pain was constant." He may be exaggerating, but that is a matter for resolution at a trial. Leaving a serious case of GERD untreated for two months is a dereliction of medical duty, cf. *Jett v. Penner,* 439 F.3d 1091, 1097–98 (9th Cir.2006), and given the extreme simplicity of treatment—supplying the sufferer daily with a few pills of an over-the-counter drug—a jury would not be irrational to conclude that the defendants (or at least some of them) knew that the plaintiff had a very unpleasant, potentially dangerous, yet readily treatable disease, yet they had done nothing for two months because they were indifferent to the plaintiff's condition ("you are not bleeding, you are not dead, you are talking to me, so it can't be an emergency"). A prison officer is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health," *Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.1995), quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

We recently had occasion to note that "where an inmate alleges an objectively serious medical condition, it may be better to appoint counsel—so that he or she can investigate and flesh out any claim that may exist—than to dismiss a potentially meritorious claim and leave the prisoner in harm's way." *Perez v. Fenoglio, supra,* at 784. We placed particular emphasis on the case that has progressed from the pleading stage "to discovery or trial. Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out. These tasks are even more challenging in cases ... where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received. District courts abuse their discretion where they fail to consider the complexities of advanced-stage litigation activities and whether a litigant is capable of handling them." *Id.* at 785 (citations omitted). These are points for the district court to bear in mind on remand.

Summary judgment for the defendants was inappropriate. The judgment must therefore be reversed and the case remanded for further proceedings consistent with this opinion. A number of the named defendants are not mentioned in Miller's brief, however, and the district judge will have to decide on remand whether the claims against them have been abandoned and if not whether those defendants should be retained in, or dismissed from, the case.

REVERSED AND REMANDED.