In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3034

THOMAS JAMES

*Plaintiff-Appellant,*

*v.*

LORENZO ELI, *et al.*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-541 — **William T. Lawrence**, *Judge.*

ARGUED APRIL 10, 2018 — DECIDED MAY 2, 2018

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Plaintiff-appellant Thomas James, an inmate with the Arizona Department of Corrections, filed a pro se complaint against defendants-appellees, Dr. Lorenzo Eli and Dr. Nicolas Villanustre, for alleged deliberate indifference towards his medical care while he was incarcerated in Indiana. Plaintiff now appeals the summary judgment entered in favor of defendants, arguing that the district court

abused its discretion by failing to recruit counsel to assist him. For the reasons stated below, we vacate the judgment and remand for further proceedings.

## I. Background

### A. Factual Background

Plaintiff has been incarcerated since 2002. He began his confinement in Arizona, but was transferred to New Castle Correctional Facility ("New Castle") in Indiana in April 2007. He returned to Arizona in April 2008.

In October 2007, plaintiff developed an infected ingrown toenail while confined at New Castle. He submitted a "Health Needs Request" form to the prison's Health Unit on October 23, 2007. Eli, a New Castle staff physician, evaluated plaintiff the same day. Eli ordered culture and sensitivity tests and prescribed ointment, antibiotics, and dressing changes. He also prescribed Tylenol and a "lay-in pass," which allowed plaintiff to receive meals in his cell for ten days. He scheduled a follow-up appointment in two weeks and referred plaintiff to the facility's foot doctor.

Plaintiff returned to the Health Unit on October 30, 2007, complaining of pain. Eli informed plaintiff "that he needed to give the antibiotics a chance to work" and provided him a box of Ibuprofen. Eli saw plaintiff again at his two-week follow-up on November 6, 2007. Eli claims that by that time, plaintiff's toenail "looked much better." As a result, Eli continued plaintiff's antibiotic and pain prescriptions for another ten days and extended his lay-in pass for seven days.

Eli had no further involvement in the treatment of plaintiff's toe. According to medical records, plaintiff saw another New Castle physician on November 20, 2017 and requested

that his entire toenail be removed. The doctor granted plaintiff's request and afterwards prescribed crutches, pain medication, and antibiotics.

Sometime later, plaintiff fell on a set of prison stairs and hit his chin on the handrail, injuring his jaw. He blames the fall on his injured toe, pain medications, and lack of adequate bedrest following his toenail removal procedure. According to plaintiff, his jaw "got better" and the swelling "went down" over the next few weeks. However, the swelling returned on December 25, 2007 after his left jaw "cracked" while he was eating. Two days later, on December 27, 2007, plaintiff explained the situation to Eli and submitted another Health Needs Request form.[1]

On December 29, 2007, plaintiff was evaluated by another New Castle physician who ordered x-rays and prescribed Ibuprofen. When Eli examined plaintiff's x-rays on January 2, 2008, he observed a "fractured left mandible." He immediately transferred plaintiff to the emergency room at nearby Wishard Hospital and prescribed him pain medication. Wishard physicians confirmed plaintiff's diagnosis—a "comminuted left mandibular subcondylar fracture with anterior dislocation and displacement of the condyle"—and referred him to a plastic surgeon. In the meantime, Eli examined plaintiff again on January 3, 2008. He put plaintiff on a soft diet, continued his pain medication, and placed him in the infirmary.

Dr. Villanustre, a plastic surgeon at Wishard Hospital, evaluated plaintiff on January 7, 2008. According to medical

---

[1] The current record is unclear as to whether plaintiff sought medical attention for his jaw prior to December 27.

records, although plaintiff "still complain[ed] of pain" in his jaw, Villanustre noted that he had a "four fingerbreadth's mouth opening" with only "slight deviation of the chin towards the left." Villanustre further observed that plaintiff had "normal occlusion with no intraoral wounds," and "minimal swelling on the left angle of the jaw." As a result, given "the length of time since the injury," "good function" of plaintiff's jaw, and "normal occlusion," Villanustre decided surgery was unnecessary. Instead, he prescribed a soft diet and a follow-up x-ray in two weeks.

## B. Procedural Background

In September 2009, plaintiff filed a pro se Eighth Amendment complaint against Eli and Villanustre pursuant to 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his toenail and jaw infirmities. Specifically, plaintiff claimed Eli's treatment to his toenail caused a staph infection and unnecessary suffering, while Villanustre's decision against surgery for his jaw resulted in long-term temporomandibular joint disorder and chronic migraine headaches.

Plaintiff requested counsel on the same dates he filed his original, first, and second amended complaints. He argued, *inter alia*, that his case would require "substantial investigation and discovery" and that his imprisonment in Arizona would "greatly limit" his ability to litigate the case in Indiana. He further asserted that the relevant issues were "complex" and that he did not have access to necessary legal materials. He also claimed he would have "a hard time with writing documents" due to his migraines. The district court denied all of these motions as premature. The court noted that because

plaintiff's complaints were still subject to initial screening un-
der 28 U.S.C. § 1915A, it could not yet conclude that he pre-
sented a viable claim for relief.

In July 2010, the court completed its § 1915A screening and
allowed the claims against Eli and Villanustre to proceed.
Plaintiff requested counsel again on March 21, 2011 and
claimed he was having trouble obtaining written discovery.
The district court denied the motion on May 19, 2011. The
court acknowledged that plaintiff "[had] been unsuccessful in
recruiting representation," but nonetheless found he had
"demonstrated familiarity with his claims and the ability to
present them." The court further noted that the issues pre-
sented were "not complex," and that it did "not appear to be
a case in which the presence of counsel would make a differ-
ence in the outcome." Finally, the court stated that plaintiff's
discovery concerns were "a routine matter" it expected the
parties to overcome "without its intervention."

Plaintiff filed a renewed motion for counsel on February
3, 2014. He argued that an attorney was necessary to "fully
and fairly" litigate his case by eliciting expert medical testi-
mony, obtaining discovery, and taking depositions. He also
reiterated that his migraines impeded his ability to represent
himself. The district court denied this motion on February 6,
2014. Once again, the court conceded that plaintiff had "made
a reasonable effort to secure representation," but found he
was nonetheless "competent to litigate on his own" given his
"comprehensible filings, … use of the court's processes,
and … familiarity with the factual circumstances surrounding
his legal claims."

Plaintiff filed another motion for counsel on June 23, 2014,
restating his belief that counsel should be appointed "to hire

a medical expert." The court denied this motion on November 6, 2014, stating that plaintiff had "demonstrated his awareness of the facts surrounding [his] claims and his understanding of the applicable legal standard."

On September 18, 2014, while plaintiff's last motion for counsel was still pending, the district court granted Villanustre summary judgment. In its ruling, the district court noted that plaintiff had neither responded to Villanustre's summary judgment motion nor presented any evidence supporting his claims. As a result, the court deemed Villanustre's proposed facts as admitted and concluded that plaintiff had not shown deliberate indifference in Villanustre's medical treatment.

Eli filed his own motion for summary judgment on October 22, 2014, which the district court granted on August 11, 2015. Although this time plaintiff filed numerous written responses, the court found they were "insufficient to create a genuine issue of material fact" because almost all of them were unsupported by admissible evidence.[2] The court entered final judgment the same day.

## II. Discussion

In federal civil litigation, litigants possess neither a constitutional nor statutory right to a court-appointed attorney. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). Nevertheless, under the *in forma pauperis* statute, a district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Thus, "an indigent civil litigant may ask the district court to request an attorney

---

[2] Plaintiff submitted a number of personal declarations, but only one of them was sworn under penalty of perjury.

to represent him *pro bono publico*." *Pruitt*, 503 F.3d at 649. "[T]he language of § 1915(e)(1) is entirely permissive; it says the court '*may*' request an attorney." *Id.* at 654 (emphasis added). As a result, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.*

"This 'does not mean that no legal standard governs that discretion.'" *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). "[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (second alteration in original) (quoting *Martin*, 546 U.S. at 139). In *Pruitt*, we announced this Circuit's operative legal standard:

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

*Id.* The first step in this analysis is not at issue here; the record indicates (and the district court acknowledged) that plaintiff made repeated, unsuccessful attempts to obtain counsel on his own accord.

The second step is itself "grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself." *Id.* at 655. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabil-

ities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* Ultimately, "[t]he question is not whether a lawyer would present the case more effectively than the pro se plaintiff; 'if that were the test, district judges would be required to request counsel for every indigent litigant.'" *Id.* (internal quotation marks omitted) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)). "Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* Notably, this inquiry extends beyond the trial stage of the proceedings. *See id.* The relevant concern is "whether the plaintiff appears competent to *litigate* his own claims, given their degree of difficulty." *Id.* This includes *all* of the tasks "that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.*

"[B]ecause the decision belongs to the district court, we have resisted laying down categorical rules regarding recruitment of counsel in particular types of cases." *Id.* at 656. "[T]here are no hard and fast rules for evaluating the factual and legal difficulty of the plaintiff's claims," nor are there "fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Rather, "[t]he inquiry into plaintiff competence and case difficulty is particularized to the person and case before the court." *Id.* at 656.

Still, we have recognized that certain circumstances demand particular judicial consideration. We have noted, for example, that complexity increases and competence decreases as a case proceeds to the advanced phases of litigation. "[A]s the case moves beyond the pleading stage, into discovery, and

closer to trial, the plaintiff will face an increasingly complex set of demands." *Id.* at 663 (Rovner, J., concurring). "Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out." *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015)). Thus, "[d]istrict courts abuse their discretion where they fail to consider the complexities of advanced-stage litigation activities and whether a litigant is capable of handling them." *Perez*, 792 F.3d at 785.

We have also highlighted the "additional hurdles" facing a prisoner-plaintiff who is "transferred to another facility after the events underlying his claims," and therefore does not "have ready access to any of the witnesses, documents or defendants … necessary to put on a credible case." *Santiago v. Walls*, 599 F.3d 749, 762–63 (7th Cir. 2010); *see also, e.g., Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (noting that plaintiff was incarcerated 300 miles from the location of his underlying incident); *Navejar v. Iyiola*, 718 F.3d 692, 698 (7th Cir. 2013) ("[O]nce Navejar was transferred, he faced 'significant problems' in litigating pro se." (quoting *Santiago*, 599 F.3d at 762)); *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991) (noting that plaintiff was "unable to investigate crucial facts because he [was] incarcerated in a facility different from that in which the alleged conduct took place"); *but see Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (affirming denial of recruited counsel where the plaintiff did not "explain[] why the transfer affected his ability to litigate [the] case").

We have similarly recognized that prisoners "often face difficulty 'when litigating constitutional claims that involve

the state of mind of the defendant,'" such as those involving deliberate indifference. *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) (quoting *Santiago*, 599 F.3d at 761). "[W]hen it comes to nuanced legal issues like … deliberate indifference, … even a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence." *Pruitt*, 503 F.3d at 664 (Rovner, J., concurring).

Finally, we have acknowledged that "cases involving complex medical evidence are typically more difficult" for pro se litigants. *Santiago*, 599 F.3d at 761; *Perez*, 792 F.3d at 784; *Pruitt*, 503 F.3d at 655–56; *Zarnes v. Rhodes*, 64 F.3d 285, 289 n.2 (7th Cir. 1995) (collecting cases). This is particularly true where a prisoner has received at least *some* medical treatment, because he must show "a substantial departure from accepted professional judgment, practice, or standards," and expert medical evidence is often required to prove this aspect of his claim. *Henderson*, 755 F.3d at 566 (quoting *McGee v. Adams,* 721 F.3d 474, 481 (7th Cir. 2013)); *see also Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (noting that the plaintiff's case was "legally more complicated than a typical failure-to-treat claim because it require[d] an assessment of the adequacy of the treatment that [the plaintiff] did receive, a question that [would] likely require expert testimony"); *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992) ("Jackson needed the expert testimony of a physician or health professional to prove … the accepted professional practice … and that [the treatment the plaintiff received] constituted a substantial departure from the accepted professional practice."). "[U]necessary risk may be imperceptible to a lay person," and "can be obscured by the need for specialized expertise to understand the various implications of a particular course of treatment."

*Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). Indeed, "[e]ven among the medical community, the permissible bounds of competent medical judgment are not always clear." *Id*. Thus, "it can be challenging to draw a line between an acceptable difference of opinion … and an action that reflects sub-minimal competence and crosses the threshold into deliberate indifference." *Id.* (footnote omitted).

In the end, none of these issues are "necessary or conclusive." *See Pruitt*, 503 F.3d at 655 n.9. The ultimate decision "is a practical one, made in light of whatever relevant evidence is available on the question." *Id.* at 655. "To inform the decision, the judge should review any information submitted in support of the request for counsel, as well as the pleadings, communications from, and any contact with the plaintiff." *Id.* A judge should also consider "the plaintiff's literacy, communication skills, educational level, and litigation experience," and, if supported by evidence in the record, "the plaintiff's intellectual capacity and psychological history." *Id.*

We review the denial of a request for recruitment of counsel for an abuse of discretion. *Id.* at 658. This normally occurs where: "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (quoting *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 755 (7th Cir. 2004)). A trial court can also abuse its discretion "when it overlooks essential evidence or fails to consider relevant factors." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159 (7th Cir. 1989); *see also Kruger v. Apfel*, 214 F.3d 784, 786 (7th Cir. 2000).

"As with any discretionary determination, the question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Pruitt*, 503 F.3d at 658; *see also Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993) ("[O]ur review of the judge's decision not to request a lawyer for the plaintiff is deferential. We ask not whether [the judge] was right, but whether he was reasonable."). Moreover, "[e]rror is relative to what the judge reasonably could have known *at the time he had to make his ruling*." *Pruitt*, 503 F.3d at 659 (alteration in original) (emphasis added) (quoting *Farmer,* 990 F.2d at 322). "[T]he judge cannot know with certainty whether the plaintiff will actually prove to be competent to litigate his own case," and instead "can only make a determination based on the record as it exists when the motion is brought." *Id.* at 656. Thus, our review "is limited to the record at the time the decision was made"; "[e]vidence unavailable at the time discretion was exercised cannot be used to demonstrate abuse of that discretion." *Id.* at 656, 659.

Also, our inquiry does not stop with an abuse of discretion analysis. "Even if a district court's denial of counsel amounts to an abuse of its discretion, we will reverse only upon a showing of prejudice." *Id.* at 659. A showing of prejudice does not require the plaintiff to demonstrate "that he would have *won* his case had he been represented by counsel." *Id.* (emphasis added). "Instead, an erroneous denial of pro bono counsel will be prejudicial if there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id.* Additionally, "[u]nlike abuse of

discretion, prejudice may be established by a litigant's poor performance before or during trial." *Id.*

> For example, if the record demonstrates that the pro se plaintiff was incapable of engaging in any investigation; or locating and presenting key witnesses or evidence; or presenting a reasonably coherent opening statement, witness examinations, and closing argument during trial, the plaintiff may be able to establish a reasonable likelihood that the presence of counsel would have made a difference in the outcome.

*Id.* at 659–60. "This is not to say every mistake along the way will establish prejudice; some erroneous denials of pro bono counsel will turn out to be harmless." *Id.* at 660. Overall, "[w]hether there is a reasonable likelihood that the presence of counsel would have altered the outcome depends upon a totality-of-the-circumstances review of the proceedings as a whole." *Id.*

Turning to the present case, we hold that the district court abused its discretion by declining to recruit counsel at the summary judgment stage of plaintiff's proceedings.[3] Plain-

---

[3] The denial of plaintiff's initial counsel requests clearly did not constitute an abuse of discretion. Those motions coincided with the filing of plaintiff's original, first, and second amended complaints, respectively. "Requests for counsel typically are made by plaintiffs … at the outset of litigation, and at that stage district judges frequently, and with good reason, will deny those requests." *Pruitt*, 503 F.3d at 663 (Rovner, J., concurring); *see also Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010). "Many pro se suits turn out to be frivolous, and a judge justifiably will be reluctant to solicit pro bono assistance from the bar until she is sure that the

tiff's case involves all of the complicating factors discussed *supra*. First, his allegations involve defendants' state of mind. *See Henderson*, 755 F.3d at 566; *Santiago*, 599 F.3d at 761. Second, his case progressed beyond the pleadings and he was facing the "increasingly complex" demands of discovery and dispositive motions. *See Pruitt*, 503 F.3d at 663 (Rovner, J., concurring); *see also Miller*, 794 F.3d at 880; *Perez*, 792 F.3d at 785. Third, his confinement in Arizona placed him over 1,000 miles from the location of his underlying claims. *See Santiago*, 599 F.3d at 762; *Junior* 724 F.3d at 815; *Navejar*, 718 F.3d at 698; *Tucker*, 948 F.2d at 391.

Finally, complex medical evidence arguably surrounded the treatment of his jaw fracture. *See Santiago*, 599 F.3d at 761; *Perez*, 792 F.3d at 784. Neither his official diagnosis (a comminuted left mandibular subcondylar fracture with anterior dislocation and displacement of the condyle) nor Villanustre's findings (four fingerbreadth's mouth opening with slight deviation of the chin toward the left; normal occlusion with no intraoral wounds; and minimal swelling on the left angle of the jaw) are readily decipherable without specialized training. Plaintiff's condition was apparently so complex that it necessitated referrals from general practitioners to a doctor who specialized in plastic surgery. Additionally, his treatment took place at multiple medical institutions (New Castle, Wishard,

---

case has at least some potential merit." *Pruitt*, 503 F.3d at 663 (Rovner, J., concurring). Such was the case here, where the court had not yet completed its mandatory 28 U.S.C. § 1915A screening. Plaintiff's third motion on March 21, 2011 presents a tougher question; by that point, the case had advanced beyond the pleading stage and plaintiff complained of his inability to obtain written discovery from Arizona. We need not make a definitive ruling, however, given plaintiff's later motions on February 3 and June 23, 2014.

and his local facility in Arizona), and included x-rays and CT scans. This not only broadened the scope of relevant discovery, but also necessitated some level of expertise for its proper interpretation.

The district court was aware of each of these complications when it denied plaintiff's February 3 and June 23, 2014 counsel requests. However, its rulings do not specifically address *any* of these aggravating issues. Instead, the court makes cursory reference to plaintiff's "awareness of the facts," "comprehensible filings," "use of the court's processes," and "understanding of the applicable legal standard," without "delving into any of [plaintiff's] personal characteristics or the specifics of the case." *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014). Even under our deferential standard of review, this is not enough. "Though the district court need not address every point raised in recruitment motions, it must address those that bear directly on whether 'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* at 659 (quoting *Pruitt*, 503 F.3d at 655); *see also Santiago*, 599 F.3d at 765 ("[T]he district court failed to take into consideration the peculiar circumstances of this case that made the pretrial phase of this litigation especially difficult for this particular plaintiff."). Thus, "the district court applied the wrong—that is, an incomplete—legal standard when reviewing [plaintiff's] motions for pro bono counsel." *Pruitt*, 503 F.3d at 660. Accordingly, although plaintiff's unique "combination of circumstances may not always warrant the recruitment of counsel," the district court's "methodological lapse in failing to give full consideration to each factor constitutes an abuse of discretion." *See Santiago*, 599 F.3d at 765; *see*

*also Pruitt*, 503 F.3d at 660 ("The court's failure to undertake [the] necessary inquiry is an abuse of discretion.").

We make this determination while recognizing that "deciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson*, 755 F.3d at 564 (quoting *Olson*, 750 F.3d at 711). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Olson*, 750 F.3d at 711. Moreover, "[a] district court may only ask, not compel, an attorney to represent a litigant who is unable to afford counsel." *Cuevas v. United States*, 580 F. App'x 71, 74 (3d Cir. 2014) (unpublished opinion). As a result, "identifying a volunteer is not always possible, especially for cases outside of major metropolitan areas." *Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018).

Still, even with "the great deference that we owe to the district court … scrutiny of the record for methodological lapses is well within" our duty and capability. *See Santiago*, 599 F.3d at 765. The denials of counsel at issue here do not withstand such scrutiny.

Finally, plaintiff's deficient pretrial performance sufficiently establishes prejudice. Despite his numerous filings, he was unable to respond to defendants' summary judgment motions with admissible evidence. His attempts to conduct discovery were equally hopeless. Instead of seeking medical records through subpoenas or formal discovery requests, he filed multiple improper motions with the court. Each time, the court fruitlessly reminded plaintiff to utilize appropriate dis-

covery methods. As a result, plaintiff never obtained his complete medical records from his current physician. Plaintiff also failed to depose any witnesses, including the named defendants, who could have been forced to testify "about their subjective knowledge of [his] health and accepted standards of care." *See Henderson*, 755 F.3d at 567. He likewise did not obtain "*other* evidence on the accepted standard of care, [such as] an expert report." *See id.* (emphasis added). Therefore, on the whole, a lawyer appointed in time to help plaintiff with discovery could have potentially helped him "present sufficient facts to create a genuine issue about why [defendants] … advised a continuation of ineffective treatments that prolonged his pain." *See Dewitt*, 760 F.3d at 659.

## III. Conclusion

For the foregoing reasons, we REVERSE the denial of plaintiff's motions for recruitment of counsel, VACATE the judgment, and REMAND for further proceedings consistent with this opinion.