NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2019[*]
Decided August 12, 2019

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-3569

| | |
|---|---|
| WALTER J.D. MOFFETT, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 15-C-644 |
| DONALD STRAHOTA, et al., *Defendants-Appellees.* | Lynn Adelman, *Judge.* |

**O R D E R**

Walter Moffett, a Wisconsin inmate, alleged that prison officials at Waupun Correctional Institution violated the Eighth Amendment by exposing him to dangerous chemicals and ignoring medical complications that followed. *See* 42 U.S.C. § 1983. Five times he asked the district court to recruit counsel. The court denied each request and eventually entered summary judgment for the defendants. Because we cannot determine whether Moffett's fifth request for recruitment of counsel was appropriately

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

resolved, we order a limited remand to the district court, so that the court can consider whether to reopen the case and recruit counsel for Moffett.

In his verified amended complaint, Moffett accused two corrections officers, whom he identified as John Does, of spraying a "harmful chemical agent[]" onto his bedding. Though he showed the supposedly contaminated linens to Sergeant Jeffrey Meyer, Meyer refused to take them away. According to Moffett, the chemical agent quickly caused him to become ill to the point of vomiting blood.

Over the course of the next four days, Moffett says he asked several prison officials for medical treatment. The first to do anything was Officer Vinson Walker, who assured Moffett that a sergeant knew he was vomiting blood. Moffett believed this sergeant to be either Meyer or "Jane Doe #1." Though this sergeant did nothing with Walker's report, Moffett alleged that Nurse Jane Doe #2 visited him the next day, June 23, 2013, and "merely came in front of [his] cell … stating to [him] 'you are upright and appear to be alright to me, put in a medical request'" before leaving without even a cursory medical examination. Because Moffett's requests were going unanswered, he says he sent grievances regarding his lack of medical treatment to Brian Greff (the Corrections Program Supervisor), Angelia Kroll (an Inmate Complaint Examiner), and two deputy wardens, including Michael Meisner, to no avail. Finally, on June 24, a different nurse saw how ill Moffett was and took him to a doctor. The doctor, in turn, called an ambulance to take Moffett to the hospital, where he stayed for four days to be treated for acute dehydration, esophagitis, and a hiatal hernia.

After the district court screened the complaint and denied summary judgment on exhaustion grounds, the parties began discovery. Over the course of about nine months, Moffett identified defendants to add to his case. Jane Doe #1, the sergeant to whom Officer Walker spoke, was first identified as Thomas Nelson and then, alternatively, as Joshua Overlien. The two John Does were officers Nathan Tank and Brock Kubat. And finally, Moffett identified Jane Doe #2 as nurse Gail Waltz.

Starting with his first complaint and throughout the discovery process, Moffett moved for recruitment of counsel five times. The first four motions were each denied because Moffett appeared competent to litigate his claims, which were largely within his personal knowledge and detailed in his complaint. Moffett filed his fifth motion shortly after discovery had completed.

Around this same time, the defendants moved for summary judgment based on their own declarations denying Moffett's allegations. Only three defendants—Greff, Kroll, and Meyer—remembered interacting with Moffett. The other defendants all denied involvement in any of the alleged events. Officers Wolf and Kubat swore that

they had never used chemical agents on an unoccupied cell, let alone Moffett's. Deputy Warden Meisner had worked at Columbia Correctional Institution, not Waupun, in 2013. Similarly, Sergeant Overlien worked in a guard tower, which apparently was not associated with Moffett's segregation unit, so that he doubted that he had any contact with Moffett at all. And Nurse Waltz had not met with Moffett during the time he was ill. Instead, Waltz pointed to medical records showing that a nurse named Bayer was the one who had visited Moffett on June 23.

A few months after the defendants filed their motion, the district court denied Moffett's fifth motion for recruitment of counsel. Though Moffett complained of difficulties accessing the law library at Columbia (his then place of incarceration) the court continued to find that he was capable of adequately presenting the claims in his personal knowledge. Moreover, the court emphasized that Moffett had "identified Doe defendants and engaged in discovery." Nevertheless, the court sought to accommodate Moffett's limitations by giving him six and a half months to respond to the motion for summary judgment.

Moffett responded by requesting a continuance under Federal Rule of Civil Procedure 56(d) because he was unable to contact Waupun witnesses from Columbia. The district court denied the motion, gave Moffett another month to supplement his response, but never received anything more from Moffett. Based on Moffett's "failure to supplement his response brief," the court treated the summary judgment motion as "virtually unopposed," and entered judgment for the defendants.

On appeal Moffett laments the mistakes that led him to misidentify Deputy Warden Meisner. He notes that he did not know any of the people who wronged him personally, but instead had to rely on opposing counsel, discovery documents, and inmates at Columbia to help him identify the defendants.

Moffett's story raises the possibility that the district court overestimated his ability to litigate his claims. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). Moffett's misidentification of Meisner appears to follow directly from his transfer from the prison where the events of his complaint occurred. *See James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018) (collecting cases detailing the hardships transfer can cause to prisoner litigants). An inmate at Columbia told Moffett that Waupun's deputy warden in 2013 was Meisner—but Meisner at that time was *Columbia's* warden. More significantly, the district court's assessment that Moffett engaged in discovery and identified Doe defendants is blemished by the possibility that Moffett, proceeding without counsel, had misunderstood discovery and thus identified the wrong people as his Doe defendants. *See Santiago v. Walls*, 599 F.3d 749, 763–64 (7th Cir. 2010).

Here, the record appears to imply that Moffett misidentified at least Jane Doe #2. Moffett identified this defendant as Nurse Waltz, but Waltz denies visiting Moffett during the time he was sick, and the medical record supports her story. That record also shows that on the same day that Moffett says Jane Doe #2 stood outside his cell, saw that he was standing, and told him to file a medical request, Nurse Bayer visited his cell twice. Bayer's second visit was remarkably similar to Moffett's allegations. Bayer wrote that Moffett was standing, walking with a steady gait, and yelling that he had been vomiting blood for three days because of mace. Through Bayer could not see into the cell clearly, she saw that there was colored liquid in Moffett's toilet—albeit not bright red/blood colored. She told him to relax, drink water, and to submit a health services request if he wanted to be seen. She did not examine him, she wrote, because he was too agitated and would not calm down, despite being told there was no mace.

It would be premature for us to review the entry of summary judgment before the district court can consider fully the possibility that Moffett misidentified defendants. Perhaps the court did consider this possibility when ruling on the motion and concluded that any mistake was not a result of Moffett's incompetence, but rather his own misguided tactical decisions. (Though not in the record when the judge denied counsel, Moffett insisted in his response to defendants' motion for summary judgment that Bayer's notes were fabricated, just as he has insisted other evidence was forged.) Or perhaps the court may conclude, even if there were a misidentification, it would not have recruited Moffett counsel because he was otherwise competent—the case was largely within Moffett's personal knowledge, and Moffett had successfully staved off one motion for summary judgment before losing his case at the second. At this juncture, we simply cannot know.

We therefore order a limited remand for the district court to consider whether it is inclined to reconsider its denial of Moffett's fifth motion for recruitment of counsel and vacate its judgment to do so. We will retain jurisdiction over this appeal pending the district court's decision. *See Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir. 1996).