In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2582

LEONARD THOMAS,

*Plaintiff-Appellant,*

*v.*

NICHOLAS P. WARDELL, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 15-cv-548 — **Joseph S. Van Bokkelen**, *Judge.*

ARGUED DECEMBER 13, 2019 — DECIDED MARCH 4, 2020

Before MANION, KANNE, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Indiana inmate Leonard Thomas
sued state correctional officials, alleging deficient health care,
inadequate conditions of confinement, and that officers
treated him with excessive force. The district court found
Thomas's pro se complaint deficient and gave him opportu-
nities to remedy its problems but ultimately dismissed his
case for failure to prosecute. The court also denied three re-
quests by Thomas for appointed counsel.

Because Thomas made reasonable attempts to obtain counsel and the district court did not assess whether Thomas appeared competent to litigate the case given its difficulty, we conclude the district court abused its discretion by denying Thomas's requests to appoint counsel. This outcome prejudiced Thomas, so we reverse and remand for an attorney to be appointed for him.

The district court also provided insufficient grounds on which to dismiss Thomas's case for failure to prosecute. Therefore we also vacate the dismissal of Thomas's case, reinstate it, and remand the case to proceed.

## I.

Thomas was convicted of the voluntary manslaughter of his uncle and is serving a 40-year sentence at the Westville Correctional Facility in LaPorte County, Indiana.[1] He has a history of mental illness which began before his incarceration; the symptoms of which include suicidal ideations, paranoia, and hallucinations. Thomas has also been diagnosed with epilepsy, antisocial personality disorder, and anxiety, for which he has received various medications while incarcerated.

---

[1] Since 2014 Thomas has been housed in isolation at this facility's Westville Control Unit. In June 2015 Thomas was transferred to the Wabash Valley Correctional Facility, just south of Terre Haute, Indiana, where he was assigned to the special needs unit for inmates diagnosed as seriously mentally ill. In January 2016 Thomas was transferred back to Westville and its control unit. We do not conclude these transfers impacted Thomas's litigation of this case. *See, e.g., James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018) (noting transfer of facilities can affect difficulty of pro se prisoner litigating a case).

In late 2015, proceeding pro se, Thomas sued numerous correctional officers for a host of claims. He alleged his requests for medical care—especially concerning his mental health treatment—were improperly denied or ignored. Thomas saw a psychiatrist and a psychologist but complained about the effects of psychotropic medications which were then discontinued. He also alleged correctional officials failed to protect him from self-harm. Thomas described numerous incidents which he believes support his claims, including three suicide attempts over about one year and an incident in which he was pepper sprayed.

For about 20 months Thomas's case traveled a lengthy journey which included amendments to his complaint and denials of his requests for counsel. Within the first month Thomas twice asked the district court to appoint him a lawyer ("2015 requests"). Before ruling on those motions, though, the court struck his complaint for containing too many unrelated issues and parties but granted him leave to amend. Within a month Thomas amended his complaint, but the court quickly struck that pleading for the same reason and again granted him leave to amend.

Shortly after striking the complaint a second time, the district court denied Thomas's two 2015 requests for counsel. In its order the district court cited this court's familiar decision on appointment of counsel, *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc), and concluded that Thomas had not made a reasonable effort to obtain counsel on his own. While Thomas had written 14 attorneys seeking representation, the court found those letters did not provide information about the claims Thomas was pursuing and some pre-dated certain events in his complaint. The court decided that even if

Thomas had reasonably tried to find a lawyer, the claims Thomas would pursue were unclear given the number of defendants he had listed (26 initially, 9 after amendment). The district court noted that Thomas "is seriously mentally ill," had engaged in previous suicide attempts, and had received assistance from other inmates. But the court also cited Thomas's medical records that showed average intellect, intact memory, and a logical thought process, as well as Thomas's numerous coherent requests for medical care. On this record, the district court concluded that Thomas, even without assistance from other inmates, could prepare an amended complaint and move for appointment of counsel again, if necessary.

In March of 2016, Thomas filed a second amended complaint which remained pending for some time until the district court struck it, again for containing too many unrelated claims and parties. That version of the complaint predominately alleged that Thomas was denied necessary medical treatment for his mental illness by healthcare providers and correctional officials. The district court granted Thomas time to amend his complaint or face dismissal. The court also directed the clerk of court to send Thomas a prisoner complaint form and instructed Thomas how to proceed with his claims.

Thomas followed later that year with his third motion for appointment of counsel ("2016 request"). He pleaded his mental illness and his epilepsy and asked the court to appoint a particular attorney who represented him in a different case in the U.S. District Court for the Southern District of Indiana,

even if she could only help him amend his complaint.[2] The following day the district court denied the request concluding that Thomas himself could ask the attorney who represented him in the other case to represent him here. Even more, the district court found that Thomas's failure to approach that attorney showed Thomas had not reasonably attempted to obtain counsel on his own, as *Pruitt* requires. The court also ruled on a motion by Thomas to obtain more time to amend his complaint. Rather than rule on serial requests for extensions, the court granted his motion to amend his complaint but stayed the case and statistically closed it.[3]

After not hearing from Thomas for nearly six months, the court gave Thomas one month to show cause why this case should not be dismissed as abandoned. The court stated: "[Thomas] is **CAUTIONED** that if he does not respond by that deadline, this case will be dismissed without further notice." After the deadline passed without word from Thomas, the district court dismissed this case pursuant to Federal Rule of Civil Procedure 41(b).

Thomas timely appealed and challenges the district court's dismissal of his case for failure to prosecute, its failure

---

[2] Our review shows that Thomas filed seven cases in the U.S. District Court for the Southern District of Indiana between April 2012 and March 2019, all of them now closed.

Thomas has filed three cases in the U.S. District Court for the Northern District of Indiana between November 2015 and now. In addition to this case, one other remains open.

[3] Administratively closing a case moves it to a court's inactive docket, while the court retains jurisdiction for purposes of future activities on the case. *See, e.g., American Cas. Co. of Reading, PA v. Schilli Transp. Svcs.*, 2011 WL 13352980, *2 (N.D. Ind. 2011).

to sever claims instead of dismissing his case for including unrelated claims, its denials of his request to appoint counsel under 28 U.S.C. §1915(e)(1), and its decision to not screen his complaint under 28 U.S.C. § 1915A.

## II.

We first consider the question of appointed counsel for Thomas. Resolution of his other arguments proceeds from there.[4]

We review a decision not to appoint counsel for abuse of discretion. *Pruitt*, 503 F.3d at 658. The district court does not abuse its discretion unless: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Id.* (*citing Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004)).

### A. Appointment of Counsel

A plaintiff such as Thomas does not have a statutory right to court-appointed counsel in federal civil litigation, although an indigent litigant[5] may ask the court to request an attorney to represent him. 28 U.S.C. § 1915(e)(1). Appointment is permissive under this statute, which provides a court "may" request an attorney represent a party. The decision whether to

---

[4] Because of our resolution of Thomas's appeal on appointment of counsel grounds, we do not reach Thomas's argument that the district court failed to screen his complaint under 28 U.S.C. § 1915A.

[5] Early on the district court found Thomas indigent. In this appeal Thomas paid the full filing fee, and he has been ably represented by appointed appellate counsel with our sincere thanks and appreciation.

recruit pro bono counsel is left to the district court's discretion. *Pruitt*, 503 F.3d at 654.

That discretion is governed by the legal standard announced in *Pruitt*:

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel …; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

503 F.3d at 654–55 (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th Cir. 1993)).

*Pruitt* first requires the indigent litigant to reasonably attempt to get a lawyer. When the district court denied Thomas's 2015 requests for counsel, it enumerated the lawyers whom he contacted, when he did so, and what he said to them. In its denial of Thomas's 2016 request for counsel, the district court addressed Thomas's request that his counsel in another case be appointed here. In its brief denial order (about a single page of text) the court concluded that Thomas could ask the lawyer himself and that his failure to do so proves he did not reasonably attempt to obtain counsel on his own.

On this first requirement, the district court satisfactorily evaluated the 2015 requests, but the court's brief order on Thomas's 2016 request for counsel was insufficient. The district court cursorily dismissed Thomas's 2016 request on the grounds that Thomas did not personally reach out to that lawyer. Thomas's working relationship with that attorney and

the district court's failure to take that relationship into account calls into question the district court's conclusion that Thomas did not reasonably try to get a lawyer.

The second requirement under *Pruitt* is whether the plaintiff appeared competent to litigate the case in light of its difficulty. 503 F.3d at 654.[6] As this court stated in *Pruitt*:

> [t]he inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. … [T]he question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.

*Id.* at 655. "[B]ecause the decision belongs to the district court, we have resisted laying down categorical rules regarding recruitment of counsel in particular types of cases." *Id.* at 656. "[T]here are no hard and fast rules for evaluating the factual and legal difficulty of the plaintiff's claims," nor are there "fixed requirements for determining a plaintiff's competence to litigate his own case … ." *Id.* at 655. Some of the circumstances that require judicial consideration are the phase of the

---

[6] Among its rulings, *Pruitt* clarified that the district court can only decide based on the record when the motion was brought, and that appellate review is limited to the record when the decision was made. 503 F.3d at 656. *Pruitt* also explained the district court, not this court, is to undertake the analysis of the degree of case difficulty as against the plaintiff's competence to litigate it himself. *Id.* at 658.

litigation, if the prisoner has been transferred between facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony. *See James v. Eli*, 889 F.3d 320, 327–28 (7th Cir. 2018).

The district court's assessment of Thomas's 2015 requests for counsel did not expressly consider "competency," although it did note Thomas's mental illness and cited to particular records on Thomas's mental condition. The court also ruminated on what types of motions and filings Thomas might make due to his mental illness.

Such consideration is absent, however, from the order denying Thomas's 2016 request for counsel. That order does not consider, or even mention, Thomas's competence to litigate this case himself, as required by *Pruitt*. 503 F.3d at 655. In the order on the 2015 requests the court at least cited Thomas's intellectual capacity and psychological history. But both denial orders fail to cover relevant topics, such as Thomas's literacy, communication skills, and litigation experience. *Id*. For example, Thomas's lack of a high school education should have been considered but was not. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013).

Thomas's claims also involve complex medical evidence. His suit includes claims against a psychologist for denial of necessary medical treatment, which raises questions about the standard of care. *See James*, 889 F.3d at 328 (acknowledging that cases involving complex medical evidence are typically more difficult for pro se litigants). Thomas also alleges he received prescription medications inconsistently and he was not properly treated for his conditions. Further, Thomas has been

diagnosed with serious psychological and medical conditions, including schizophrenia, antisocial personality disorder, anxiety, and epilepsy. His psychological and medical diagnoses are relevant to determinations of whether prison officials satisfied their standard of care.

But neither of the district court's orders denying counsel contend with the complexities of this medical evidence, or grapple with Thomas's allegations that certain defendants deviated from the standard of care. *Id*. (and citations threat). The district court did not show awareness of this complex medical evidence or the standard of care, as required. *Id*.

Under *Pruitt* the district court was required to weigh the difficulty of Thomas's claims against his competency to litigate those claims. 503 F.3d at 655. That did not happen here. The district court did not consider the factual and legal complexity of this case given Thomas's capabilities as required by *Pruitt* and this court's case law since. *See, e.g., James*, 889 F.3d at 329–30. Thomas's history of mental illness, in particular, should have been relevant to the district court's evaluation of his competency. *See Santiago v. Wells*, 599 F.3d 749, 762 (7th Cir. 2010) ("[P]sychological history, to the extent that [it] [is] known, [is] relevant."); *Walker v. Price*, 900 F.3d 933, 940 (7th Cir. 2018) ("Not every cognitive limitation will require the district court to recruit a lawyer, but the court should have considered how [the plaintiff]'s mental health history would affect his ability to think on his feet."). On this point, we ask "not whether [the judge] was right, but whether [the judge] was reasonable." *Pruitt*, 503 F.3d at 659. The absence of such reasoning in the district court's orders means that the reasonableness standard was not satisfied here.

As noted above, the decision whether to appoint counsel is a discretionary call. Exercise of discretion requires a court to consider those factors described in *Pruitt*. The district court here fell short of that mark. We conclude that the district court's rulings on the two requirements from *Pruitt* are arbitrary, and that on some requirements the record contains no evidence upon which the court could have rationally based its decisions. So the district court abused its discretion in denying Thomas's request for appointed counsel.

"Even if a district court's denial of counsel amounts to an abuse of its discretion, we will reverse only upon a showing of prejudice." *Pruitt*, 503 F.3d at 659. "[A]n erroneous denial of pro bono counsel will be prejudicial if there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id*.

Appointment of counsel here would have significantly changed the outcome of this case. The advice and counsel of an attorney—which the record reveals Thomas wanted very much—most likely would have resulted in Thomas responding to the court's order to show cause why this case should not be dismissed. This would have allowed Thomas's claims to proceed, so necessarily the lack of an attorney had a substantial impact.

Further, a plaintiff's deficient pretrial performance can establish prejudice. *James*, 889 F.3d at 331. This court can consider a plaintiff's inability to state a claim at the pleading stage when ruling on a motion to appoint counsel. *Armstrong v. Krupiczowicz*, 874 F.3d 1004, 1008 (7th Cir. 2017). On three occasions Thomas was unable to comply with the district court's pleading requirements. The district court did not include this

factor in its decisions, even as it ruled repeatedly that Thomas had failed to meet the pleading requirements.

We are aware that appointment of counsel is a difficult decision, *James*, 889 F.3d at 330–31, and that district courts deserve substantial leeway in such a fact-bound decision. *Id*. at 327; *Pruitt*, 503 F.3d at 658-59. But the governing legal standard from *Pruitt* is not met here because the district court failed to weigh the difficulty of Thomas's claims against his competency to litigate his allegations. Thus, the district court abused its discretion in denying Thomas's motions for counsel, and this erroneous denial prejudiced Thomas because it most likely resulted in his case being dismissed. So we reverse and remand for counsel to be appointed for Thomas.

## B. Dismissal of Thomas's Case

Thomas has also appealed the district court's dismissal of this case for failure to prosecute and the district court's handling of the misjoinder issues in his complaint. We begin with the district court's dismissal for failure to prosecute, which we review for an abuse of discretion. *See Johnson v. Chicago Bd. of Educ.*, 718 F.3d 731, 732 (7th Cir. 2013).

District courts generally have broad authority to dismiss a case for failure to prosecute, and this includes failure to comply with valid orders. *See Wilson v. Bruce*, 400 Fed. App'x 106, 108 (7th Cir. 2010). In its dismissal order the district court listed one reason for terminating the case: Thomas had missed the court-imposed deadline to contact his attorney in the other case and to amend his complaint.

When dismissal is based on a failure to prosecute, a court is required to show a record of delay, contumacious conduct,

or that lesser sanctions proved unavailable, as well as the prejudice that the delay caused the defendant. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011). The district court did not make any such findings, and we do not see the record supporting such findings. The record does not reveal delay by Thomas or obstinately disobedient conduct. While Thomas failed to comply with the May 2017 order to show cause, Thomas otherwise showed diligence in advancing his case. He requested counsel when he first filed the case as well as a month later. He amended his complaint about a month after its initial dismissal; the same with a second amended complaint. He updated the court numerous times on his change of address. When review of his second amended complaint took some time, he twice requested a status hearing. And when his second amended complaint was struck, Thomas filed his third request for counsel. Against this backdrop—a history of compliance with other deadlines—dismissal with prejudice for one missed deadline is harsh. *See Sroga v. Huberman*, 722 F.3d 980, 983 (7th Cir. 2013).

This dismissal was with prejudice under Federal Rule of Civil Procedure 41(b), and dismissal for failure to prosecute is a tough sanction. *Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998). Lesser sanctions than dismissal were available. For example, the district court could have issued Thomas a second warning or dismissed allegedly nonviable claims. Those steps did not happen here.

Prejudice is another factor when considering whether dismissal for failure to prosecute is appropriate. *Sroga*, 722 F.3d at 982. Courts have found dismissal for failure to prosecute more fitting if the delay caused prejudice to the defendant. *See Kasalo*, 656 F.3d at 561. The correctional officials have not cited

any prejudice to themselves that would warrant dismissal. Thomas's case was dismissed before any defendants were served, so they could have not suffered any prejudice. *Id*. at 983.

In dismissing this case the district court cited to a single missed deadline. No doubt, the district court here was patient with Thomas, granting him numerous opportunities to amend his complaint, as well as time to approach his counsel in his other case and to amend his complaint yet again. But viewing this case in its entirety, dismissal with prejudice due to one missed deadline "clearly appears arbitrary," *Pruitt*, 503 F.3d at 658, and an abuse of discretion. Moreover, while Thomas failed to comply with the district court's order to show cause why the case should not be dismissed, we can reasonably conclude this failure followed from Thomas proceeding without counsel. Reversal of the dismissal and reinstatement of Thomas's case follows from our decision that counsel should have been appointed.

On appeal Thomas also objects on the ground that the district court erred by dismissing his complaint for misjoinder. He argues the court should have severed or dismissed unrelated claims and then screened his complaint. But as the correctional officials point out, the orders memorializing the district court's two-step dismissal process did not list misjoinder as a ground for case termination. So we find no reversible error here. To the extent joinder issues exist in this case, Thomas's appointed counsel can address these difficulties on remand.

### III.

Thomas was indigent and made reasonable attempts to obtain counsel. The district court did not evaluate whether Thomas appeared competent to litigate his claims in light of the case's difficulty. The district court abused its discretion to Thomas's prejudice in denying his request for counsel. So we REVERSE the decision not to appoint counsel and ORDER that counsel be appointed in the district court.

At oral argument we asked Thomas's appellate counsel if she had interest in representing Thomas on remand, which she did. On remand the district court can consider appointing Thomas's appellate counsel as his counsel in the district court.

On this case's facts and its procedural history, dismissal for failure to prosecute as a result of one missed deadline is arbitrary and an abuse of discretion. So we also VACATE the district court's dismissal of this case, reinstate this case, and REMAND the case to the district court for further proceedings.