In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-4209

RANDY MCCAA,

*Plaintiff-Appellant,*

*v.*

TODD HAMILTON *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 16-CV-175— **J.P. Stadtmueller,** *Judge.*

ARGUED APRIL 5, 2018 — DECIDED JUNE 27, 2018

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Randy McCaa filed a *pro se* complaint in 2016, alleging that prison officials at the Green Bay Correctional Institution deliberately disregarded his risk of suicide, causing him to suffer serious physical injuries on four different occasions. Over the course of the litigation below, McCaa filed four motions asking the district court to recruit

counsel for him. The district court denied all four and ulti-
mately granted summary judgment to the defendants-appel-
lees.

When denying McCaa's third motion to recruit counsel,
however, the district court did not specifically address cir-
cumstances that bore on McCaa's ability to competently liti-
gate his own case. This was an abuse of discretion that preju-
diced McCaa. Accordingly, we vacate the district court's judg-
ment and remand McCaa's case for further proceedings.

## I. BACKGROUND

McCaa suffers from various mental illnesses, and he has a
history of self-injury and suicide attempts. In this 42 U.S.C.
§ 1983 suit, he alleges that officials and staff at Green Bay Cor-
rectional Institution were deliberately indifferent to his
self-harm on four separate occasions. After screening McCaa's
*pro se* complaint in accordance with 28 U.S.C. § 1915A, the dis-
trict court allowed five of McCaa's deliberate indifference
claims to go forward. Four of the claims relate to the officials'
failure to prevent McCaa's self-harm from December 2013 to
August 2015, and one relates to the officials' failure to obtain
medical assistance for McCaa after a self-harm incident in
May 2014.

Along with his *pro se* complaint, McCaa filed a motion to
appoint counsel. There is no right to court-appointed counsel
in federal civil litigation, but an indigent civil litigant may ask
the district court to request an attorney to represent the liti-
gant *pro bono*. 28 U.S.C. § 1915(e); *Pruitt v. Mote*, 503 F.3d 647,
649 (7th Cir. 2007) (en banc). The district court properly con-
strued McCaa's motion to appoint counsel as a motion to re-
cruit counsel under § 1915(e). *Id.* at 654.

In support of his motion for counsel, McCaa posited that the issues in the case are complex, with several different claims involving different sets of defendants, and that the success of these claims would come down to a credibility contest. McCaa also indicated that he has serious mental illnesses, a fifth-grade reading level, little legal knowledge, and extremely limited access—as a segregation inmate—to the law library and witnesses.

The district court denied the motion without prejudice, reasoning that: "McCaa appears able to coherently present his case. His filings demonstrate that he is able to communicate his positions and submit court papers as he requires or deems appropriate." (R. 16 at 8.)

McCaa filed a second motion to appoint counsel about a month later. In addition to his previous points, he noted that he has a learning disability, that he had been transferred to a new prison facility, and that he did not know where his witness was located. The district court denied the motion, again without prejudice, writing: "Nothing has changed since the Court's [last] order which would alter its result. The Court still finds that the plaintiff can adequately communicate his positions and submit court papers as he requires or deems appropriate." (R. 26 at 1–2.)

About two months after that denial, and after discovery began, McCaa brought his third motion for counsel. McCaa reiterated the competency and complexity points he had raised in his previous motions. To further support his claim that the case was complex, he noted that a second attorney had recently joined the defense team. He also indicated that he would have difficulty getting opposing counsel to produce documents now that the case was in the discovery stage. And,

McCaa told the district court, he previously relied heavily on other prisoners for litigation assistance but recently was having difficulty getting help. (Indeed, one prisoner submitted a declaration claiming he drafted McCaa's motion for reconsideration and amended complaint at the start of litigation. (R. 19 at 2–3.))

Again, the district court denied McCaa's motion. For the first time, it specifically noted McCaa's mental illness and reading disability, but reasoned that those attributes did not weigh in favor of recruiting counsel because "he appears to be able to present cogent arguments and navigate the litigation process, particularly as demonstrated by his filings since his second motion." (R. 53 at 1.) As for the case's complexity, McCaa "claims that the case is complex, citing the fact that a second assistant attorney general has entered his appearance in the matter. This is no evidence of the matter's complexity." (*Id.* (citations omitted).) Lastly, the court indicated that McCaa's inability to secure help from other prisoners was "of no moment at this stage; the plaintiff has been ably litigating the matter from its inception and the Court has no evidence that this will not continue." (*Id.* at 1–2.)

Accordingly, McCaa continued through the discovery stage of his case *pro se*. He did not conduct any depositions, and it appears he had some difficulty securing discovery from the defendants, (*see, e.g.,* R. 58, Letter to the Court). But, he had a verified complaint that served as an affidavit, and he secured three additional declarations from witnesses.

After the defendants moved for summary judgment, McCaa filed his fourth and final motion for counsel. In it, McCaa argued that he was having difficulty contacting witnesses who were no longer incarcerated, that he could not

present a case at trial without a lawyer, and that his case was worthy for a jury. The district court denied the motion at the same time it granted summary judgment to the defendants. It gave two reasons for doing so. First, "McCaa has been ably litigating this matter since its inception," and second, "McCaa's statements in the latest motion would only be relevant if this case were proceeding to trial, but it is not." (R. 80 at 18.)

The case was not proceeding toward trial because, the district court reasoned, the defendants were entitled to judgment as matter of law. In so concluding, the district court took all of the defendants' proposed facts as undisputed because McCaa did not properly cite any evidence despite instructions from the district court on how to do so, (R. 31-1–31-7). It dismissed his case, and McCaa appealed.

On September 28, 2017, this court indicated we would recruit counsel for McCaa's appeal and advised that the recruited counsel should address whether the district court abused its discretion in denying McCaa's requests for counsel. That issue is before us now.

## II. ANALYSIS

We leave the decision to recruit counsel under § 1915(e) to the district court's discretion, but that discretion is to be "guided by sound legal principles." *Pruitt*, 503 F.3d at 654 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). In *Pruitt*, we announced those principles, instructing district courts to analyze (1) whether the plaintiff has made a reasonable attempt to obtain counsel and (2) whether the plaintiff appears competent to litigate the case himself, given the difficulty of the particular case at hand. *Id.* The failure to

engage in this analysis is necessarily an abuse of discretion, but we only reverse based on that error if the plaintiff shows prejudice. *Id.* at 658–59.

In this case, the first inquiry is not at issue: the district court found that McCaa had made reasonable attempts to obtain counsel without success, and the defendants-appellees do not contest that finding on appeal. Accordingly, our analysis focuses on whether the district court reversibly erred when undertaking the second inquiry: whether McCaa was competent to litigate his case given its particular complexities.

For the reasons that follow, we conclude that the district court reversibly erred when it denied McCaa's third motion for counsel without addressing certain circumstances bearing on the complexity of the case and McCaa's competency to litigate it himself.

A.  *The district court abused its discretion in denying McCaa's third motion for counsel.*

The components of the second inquiry—competency and complexity—are "necessarily intertwined," *id.* at 655, but the district court must still address both elements, *id.* at 649, 55. Though "we have resisted laying down categorical rules regarding recruitment of counsel," *id.* at 656, (and we continue to do so in this case), we have previously held that a district court abuses its discretion when it does not take note of "certain circumstances [that] demand particular judicial consideration." *James v. Eli*, 889 F.3d 320, 327 (7th Cir. 2018). This is because "[t]he inquiry into plaintiff competence and case difficulty" should be "particularized to the person and case before the court." *Pruitt*, 503 F.3d at 656.

"Though the district court need not address every point raised in recruitment motions, it must address those that bear directly on whether 'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it … .'" *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 659 (7th Cir. 2014) (quoting *Pruitt*, 503 F.3d at 655). Courts should consider any relevant evidence raised "in support of the request for counsel, as well as the pleadings, communications from, and any contact with the plaintiff." *Pruitt* at 655; *cf. id.* at 656 (noting that the district court "can only make a determination based on the record as it exists when the motion is brought").

Here, the district court abused its discretion when denying McCaa's third motion for counsel because its ruling did not specifically address certain circumstances that warranted discussion.

By the time that McCaa brought his third motion for counsel, his deliberate indifference claims had advanced to the discovery stage. "[A]s the case moves beyond the pleading stage, into discovery, and closer to trial, the plaintiff will face an increasingly complex set of demands." *Id.* at 663 (Rovner, J., concurring); *James*, 889 F.3d at 327. This may be especially true for some deliberate indifference claims because they "involve the state of mind of the defendant." *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) (quoting *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010)); *Pruitt*, 503 F.3d at 664 (Rovner, J., concurring) ("[E]ven a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence" for deliberate indifference claims.); *but see Olson v. Morgan*, 750 F.3d 708, 711–12 (7th Cir. 2014) ("While some

state-of-mind issues may involve subtle questions too complex for pro se litigants … [,] [w]e reject … that state-of-mind questions are categorically too difficult for pro se litigants." (citation omitted)).

The district court did not specifically address whether McCaa was able to identify, collect, and present the right type of evidence for his deliberate indifference claims. In fact, it did not even respond to McCaa's argument that, now that the case had advanced, he would have difficulty engaging in discovery. The only specific discussion of complexity focused on McCaa's argument about the appearance of a second defense attorney. The court's failure to specifically address the complexity of McCaa's deliberate indifference claims as his case advanced to a more sophisticated stage of litigation is particularly problematic given that, as we discuss next, the court also did not address whether McCaa's transfer and his help from other prisoners affected his competency.

First, McCaa told the district court in the declaration accompanying his second motion for counsel that he had recently been transferred from the correctional facility in which the events giving rise to his claims took place, and that the transfer made it difficult for him to locate witnesses. Indeed, prisoner-plaintiffs may face a significant obstacle to effective litigation when they are "transferred to another facility after the events underlying [their] claims" took place. *Santiago*, 599 F.3d at 762–63.

The district court did not mention McCaa's transfer in denying his third motion, let alone did it address whether the transfer impacted McCaa's ability to litigate and engage in effective discovery. It should have.

Second, in McCaa's third motion for counsel he told the court that he had been receiving help from other prisoners previously but was having trouble finding assistance recently. This statement implies that McCaa's competency may not have been entirely his own. In such a circumstance, courts must "specifically examine[]" a plaintiff's "personal ability to litigate the case, versus the ability of the 'jailhouse lawyer'" who assisted the plaintiff. *Dewitt*, 760 F.3d at 658.

The district court did not do so here. It simply reasserted its belief that McCaa's previous filings demonstrated his ability to "present cogent arguments and navigate the litigation process," and stated that McCaa's inability to secure help from other prisoners was "of no moment at this stage; the plaintiff has been ably litigating the matter from its inception and the Court has no evidence that this will not continue." (R. 53 at 1–2.) These statements "do[] not demonstrate that the district court specifically examined [McCaa's] personal ability to litigate the case," in light of the evidence suggesting McCaa may have had help with his filings. *Id.* In fact, these statements suggest that the district court included the fact that McCaa "receive[d] assistance from a fellow prisoner … into the decision whether to recruit counsel." *Id.* (quoting *Henderson*, 755 F.3d at 565). If the district court addressed the evidence that McCaa had help with his filings, it could have assured us that it was analyzing McCaa's "ability to litigate *his own* claims." *Id.* (quoting *Henderson*, 755 F.3d at 565).

In sum, the district court did not specifically address whether McCaa remained competent to litigate his deliberate indifference claims (on his own, from a different location than the one where the underlying events occurred) as the case proceeded into advanced-stage litigation. *See James*, 889 F.3d

at 330 (finding that the district court abused its discretion when it only made references to circumstances like the plaintiff's "awareness of the facts" and "comprehensible filings", instead of specifically addressing circumstances like the defendant's transfer and the case's progression toward trial on deliberate indifference claims). This was a "methodological lapse" that constitutes an abuse of discretion. *See id*. at 330–31 (quoting *Santiago*, 599 F.3d at 765).

### B.  *The district court's error prejudiced McCaa.*

We only reverse a district court's abuse of discretion in denying recruitment of counsel if the plaintiff is prejudiced by the error. In analyzing whether a district court abused its discretion, we recognize that a judge "cannot know with certainty whether the plaintiff will actually prove to be competent to litigate his own case," and limit our review "to the record at the time the decision was made." *Pruitt*, 503 F.3d at 656. But the litigant's actual performance *is* relevant to our prejudice analysis. *See id.* at 659–60 (explaining that prejudice might exist "if the record demonstrates that the pro se plaintiff was incapable of engaging in any investigation[,] or locating and presenting key witnesses or evidence"). To establish prejudice, plaintiffs need only demonstrate "there is a *reasonable* likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Id*. at 659.

The district court's error warrants reversal in this case because McCaa's actual performance shows he was prejudiced by the denial of his motion to recruit counsel. McCaa's discovery requests proved largely unfruitful, and he did not depose any witnesses. Instead, his evidence primarily consisted of his verified complaint and three additional witness statements. Moreover, despite having *some* evidence to support his

claim and summary judgment instructions for *pro se* litigants from the district court, McCaa failed to properly cite any of his evidence. This resulted in the district court taking all of the defendants' facts as undisputed at summary judgment and the dismissal of McCaa's case entirely. At a minimum, there is a reasonable likelihood that a lawyer would have properly cited McCaa's evidence (and perhaps even uncovered additional evidence) to dispute the defendants' proposed facts and to create a genuine issue of material fact for trial. *See Dewitt*, 760 F.3d at 659 (finding prejudice when there was a reasonable likelihood a lawyer could have helped present sufficient facts to create a genuine issue of fact to survive summary judgment).

### III. CONCLUSION

Just as we did in *James*, we recognize that district courts are "placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Olson*, 750 F.3d at 711. For that reason, we accord great deference to the district court's decision whether to recruit counsel. *Santiago*, 599 F.3d at 765. But a "methodological lapse" cannot withstand that scrutiny, *id.*; *James*, 889 F.3d at 331, and it does not do so in this case.

By the time McCaa brought his third motion for counsel, all the circumstances that warranted particular judicial consideration were before the district court. Even if McCaa's particular "combination of circumstances" did not warrant the recruitment of counsel, the district court still should have addressed those factors that bore specifically on McCaa's competence to litigate his case, given its complexities. *Santiago*, 599 F.3d at 765; *James*, 889 F.3d at 330.

The district court's denial of McCaa's third motion led McCaa to face discovery and summary judgment briefing unassisted by counsel. The prejudice he suffered became obvious when the district court granted summary judgment to the defendants on their unrebutted facts, denied McCaa's fourth motion for counsel because "McCaa's statements in the latest motion would only be relevant if this case were proceeding to trial, but it is not," (R. 80 at 18), and dismissed McCaa's case.

For these reasons, we VACATE the district court's judgment in favor of the defendants-appellees, REVERSE the district court's denials of McCaa's last two motions for counsel, and REMAND for further proceedings consistent with this opinion.

HAMILTON, *Circuit Judge*, concurring in the judgment. This is a difficult case. It can be and is being decided on narrow grounds, without grappling with all of the underlying difficulties. The court does not hold that plaintiff McCaa was entitled to have the court recruit counsel for him. I agree with that view. And perhaps I am also more skeptical than my colleagues about McCaa's motions for recruitment of counsel. Nevertheless, a combination of two factors convinces me that we need to vacate and remand the judgment here.

First, in denying McCaa's third request for recruitment of counsel, the district court failed to address his transfer to a different prison. As a practical matter, such a transfer poses major obstacles for a prisoner trying to litigate a federal civil rights case. In my view, a reasonable judge could deny all of McCaa's requests to recruit counsel, but that new development was significant enough to deserve explicit mention.

Second, in ruling on defendants' motion for summary judgment, the district court chose to enforce strictly the local district rules on the form and content of summary judgment papers. That choice may have been decisive, but it was also left to the district court's discretion. Based on my review, McCaa's papers in opposition to summary judgment were well organized and fairly concise for addressing four distinct incidents. His key evidence comprised his own affidavit (27 pages, with short, numbered paragraphs) and three short affidavits from other inmates. He also submitted about 200 pages of documents, including records from his imprisonment and Department of Corrections regulations on matters such as grievance procedures and the use of force and restraints.

The only procedural failing, by this inmate who we are told suffers from such serious mental illness and limited education, was that he failed to cite his evidence in his otherwise careful response to the defendants' proposed statements of undisputed facts. See Dkt. Nos. 66–74 (electronic filing of plaintiff's summary judgment papers). A competent lawyer would not have made that mistake, but this motion involved a small volume of evidence. The court could have chosen to overlook McCaa's procedural slip and decided the motion on the merits. That approach would have avoided magnifying the effects of not having counsel.

With regret, however, I am not able to join my colleagues' opinion. My colleagues have identified a number of factors that seem to make a strong case for appointment of counsel in this case, including McCaa's mental illness, limited education, and the challenges that pro se plaintiffs face in proving claims for deliberate indifference to serious health needs.

Yet the district court was surely aware of a number of other factors that weigh substantially against recruitment of counsel here. First, in his years in Wisconsin prisons, McCaa has compiled a significant record of other unsuccessful litigation. This record includes other cases in which federal courts in Wisconsin have recruited counsel for him from among the finest law firms in the United States. There is evidence that McCaa has boasted to prison guards about his litigation experience in trying to convince or intimidate them into treating him as he wishes to be treated. There is also a broader history of (at least attempted) manipulative conduct by McCaa in dealing with prison staff.

Now in this appeal, another fine law firm has responded generously to this court's request to represent McCaa. Its lawyers argue that capable counsel could have made this case fair and competitive by, for example, taking depositions of the defendants and key witnesses before trial. Sounds like a good idea in the abstract. But it would be awfully expensive. Even with donated lawyer time and talent, just the out-of-pocket costs of those depositions could easily surpass $10,000, yet the case seems to me offers a prospect for damages at best far smaller than that.

Those factors all make this case a less-than-promising candidate for recruiting counsel. And when we review district court decisions denying recruitment of counsel, we need to keep the bigger picture in mind. As the members of this panel know well, district judges see a lot of civil rights suits brought by pro se prisoner-plaintiffs. They challenge their conditions of confinement, ranging from medical care to use of excessive force, and from religious liberty to restrictions on recreation. In 2017, nearly 500 such cases were filed in the Eastern District of Wisconsin alone. Table C-3, Judicial Business of U.S. Courts (2017), accessible at http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2017-tables. Among those prisoner-plaintiffs, the overwhelming majority, if not all, had no lawyers of their own. Many of those cases are frivolous. Some may be among the most important that federal courts consider, to ensure that our society's treatment of prisoners meets at least minimum standards of human decency and humanity under the federal Constitution.

Few members of the bar make a living representing prisoners, but many are willing to respond to courts' requests that they take on particular prisoner cases now and then. That's in

the finest tradition of the legal profession. Their numbers and time are not unlimited. The supply-and-demand curves of classic economics tell us that as price to the consumer approaches zero, demand approaches infinite. The supply of time and talent from these generous lawyers, however, is not infinite.

So a district judge who faces a case like McCaa's must decide whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests under 28 U.S.C. § 1915(e)(1). In allocating those limited resources, a district judge should be able to make an educated and experienced assessment of how promising the plaintiff's case is, with or without counsel.

In this case, plaintiff McCaa is claiming that various prison staff responded with deliberate indifference to four incidents in which plaintiff threatened to harm himself. In each, prison staff responded, but they did not respond as he wanted them to. And he alleges that in each incident he found a sharp object despite staff efforts to keep sharp objects away from him. In each incident, he managed to cut himself on an arm. The cuts required closure with adhesive bandages. No stitches were required. His injuries could not have been (and were not) ignored, but they were not serious, at least as compared to those of many other inmates who have made claims for deliberate indifference to serious medical needs.

Given the lack of genuinely serious injuries and McCaa's history of manipulative behavior, it is easy to understand why a veteran district judge might give this case a low priority in recruiting scarce volunteer counsel. I repeat that my colleagues do not hold that it would be an abuse of discretion to

deny counsel to McCaa. They decide only that the district judge did not explain sufficiently his decision to do so, failing to give sufficient attention to relevant factors, at least in his written decision.

This court has been wrestling with the problems posed by pro se prisoner litigation for decades. See, e.g., the various opinions in *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983), and *McKeever v. Israel*, 689 F.2d 1315 (7th Cir. 1982). Judge Posner's dissent in *McKeever* suggested that federal courts should rely more on market forces to test the merits of prisoners' claims. 689 F.2d at 1324–25. Concurring in *Merritt*, Judge Cudahy memorably wrote: "Perhaps, however, the laws of economics take a different turn when prison walls intervene. Not entirely facetiously, it occurs to me that the barriers to entry into the prison litigation market might be very high." 697 F.2d at 768–69. And the debate has continued for decades.

In the end, I do not think we can do much better than leave these discretionary judgments to conscientious district judges. We should not insist that they write too much in explaining their decisions in these high-volume cases, which can involve, as this one did, multiple requests. If we demand much more, we come too close to finding, as a practical matter, a presumptive right to counsel in some categories of civil cases, such as claims for deliberate indifference in prison medical care. Yet we have consistently denied that such a right, or even a presumption, exists. See *Pruitt v. Mote*, 503 F.3d 647, 649–50, 656–57 (7th Cir. 2007) (en banc).