In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2785

LAWRENCE L. PICKETT,

*Plaintiff-Appellant,*

*v.*

CHICAGO TRANSIT AUTHORITY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 4337 — **Charles P. Kocoras**, *Judge.*

ARGUED JULY 10, 2019 — DECIDED JULY 17, 2019

Before EASTERBROOK, BARRETT, and BRENNAN, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 2015 a passenger on a bus operated by the Chicago Transit Authority screamed at and threatened Lawrence Pickett, the driver. He took six months off from work while recovering. After his physician concluded that he could return to work (though not as a driver), Pickett appeared one morning and requested a light-duty job. He was given one by the personnel on duty, but four

days later he was told that the CTA was not ready to permit his return to work.

Pickett previously had been told that before returning to work he needed to complete a form (which was enclosed with the letter) and report to CTA's Leave Management Services office, which would administer some tests (including a drug screen). He ignored those directions and simply showed up at his former workplace, where a supervisor gave him work pending advice from management. The advice, when received, turned out to be a direction that Pickett go home until he had done as instructed—fill out the form and report to Leave Management Services. Pickett did not follow those directions until 2017. He was then approved for work and retired five days later.

Before visiting Leave Management Services in 2017 he had filed with the EEOC a charge of age discrimination. Pickett says that during 2015 he saw three or four persons younger than himself doing light-duty tasks. The CTA removed him, the eldest of the group, and he believes that it left the others at work. After receiving his right-to-sue letter, Pickett began litigation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. The district court granted summary judgment to the CTA. 2018 U.S. Dist. LEXIS 119454 (N.D. Ill. July 18, 2018). (That opinion, and one earlier order, 2017 U.S. Dist. LEXIS 66873 (N.D. Ill. May 2, 2017), address several theories in addition to the age-discrimination claim, but all of those other theories have been abandoned.)

Pickett's principal contention on appeal is that the district court should have recruited counsel to represent him. He filed one motion for counsel, to which the judge replied: "Picketts [sic] Motion for Attorney representation is denied

at this time." That was it. No explanation. Pro bono counsel representing Pickett on appeal accurately observes that we have told district judges that explanations are essential. *Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007) (en banc); *McCaa v. Hamilton*, 893 F.3d 1027, 1033 (7th Cir. 2018). How else would an unrepresented litigant know what more must be done to obtain judicial assistance? *Pruitt* and later cases set out considerations that bear on the proper exercise of discretion, but without an explanation how can this court determine whether the district judge has abused that discretion? A few words might have sufficed, but the judge left both Pickett and this court in the dark.

It is not hard to imagine what those few words might have been. The judge might have pointed out that Pickett had not provided a complete financial disclosure, so the record did not show inability to afford counsel. See 28 U.S.C. §1915(e)(1). Pickett doubtless has retirement income from Social Security as well as his former employers. He paid the filing fee in the district court.

Or the judge might have observed that Pickett did not describe why he had been unable to hire counsel. A litigant's good faith but unsuccessful effort to obtain counsel is a necessary condition to the provision of judicial assistance to recruit a lawyer. See *Pruitt*, 503 F.3d at 654. Pickett told the district judge that he had approached four lawyers without success, but he did not say why they declined to represent him. Was it his unwillingness or inability to pay a retainer? Unwillingness and inability have different implications for the propriety of judicial aid. Was it that the four lawyers lacked the time to take new clients, given other commitments? Was it that the lawyers he approached were unfamil-

iar with age-discrimination law? Specialization in the bar contributes to good legal representation, and someone seeking to litigate an age-discrimination case needs to consult lawyers who practice this specialty—of which Chicago has many. Was it perhaps that they deemed Pickett's claim too weak to justify litigation? If lawyers misunderstood Pickett's contentions because he is inarticulate, then a judge might have a useful role to play in recruiting counsel, but if Pickett conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene. Why should a judge ask lawyers to devote less of their time to people with strong cases and more to people with weak ones? That would injure other litigants.

Or the judge might have observed that Pickett filed his motion so early in the case that it was impossible to tell whether he could represent himself adequately. A litigant's competence to present his claim without a lawyer's aid is another of the considerations that matter under *Pruitt*. See 503 F.3d at 654. Perhaps this is what the judge meant when he said that he would not help Pickett "at this time." Pickett did not file a second motion for judicial assistance in obtaining counsel.

Finally, the judge might have thought it significant that the Age Discrimination in Employment Act has a fee-shifting clause. 29 U.S.C. §626(b), incorporating 29 U.S.C. §216(b). Attorneys who represent successful plaintiffs can anticipate full compensation from the employer, whether or not the client can afford to pay. *Pruitt* concerned a prisoner's suit under 42 U.S.C. §1983, and although 42 U.S.C. §1988 provides for fee-shifting in §1983 suits, the fees that can be awarded in prisoner litigation are limited by 42 U.S.C. §1997e(d). See

*Johnson v. Daley*, 339 F.3d 582 (7th Cir. 2003) (en banc). Because of that cap, we did not consider in *Pruitt* how statutes that provide for a prevailing plaintiff to collect a fully compensatory fee affect the circumstances under which judges should try to recruit lawyers for indigent plaintiffs. Nor need we consider the subject here, given the other considerations already mentioned. But it deserves attention in cases where it may make a difference.

The district judge should have said one or more of these things. Denying the motion without explanation was an error, but a harmless error. See *Pennewell v. Parish*, 923 F.3d 486, 490–92 (7th Cir. 2019). It is enough for us to say that, even with the assistance of counsel on appeal, Pickett has not shown how a lawyer could have helped him overcome his biggest obstacle: he never took the steps that the CTA told him were essential. The CTA told Pickett to fill out a form and report to Leave Management Services for a drug test and other evaluation. He did not do so. Even after being removed from the position to which he had been assigned while a supervisor checked on his eligibility, Pickett failed to follow these instructions for more than a year.

Proof that the younger workers Pickett saw in light-duty positions had been allowed to bypass those administrative steps would support an age-discrimination claim. But Pickett has not alleged this. This means that he does not have any route to success, for he could not show that his age caused an adverse effect. The absence of counsel was harmless, and the claim on the merits was properly rejected by the district judge.

AFFIRMED