NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2022[*]
Decided June 24, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-2802

|  |  |
|---|---|
| ANNIE BURTON,<br>        *Plaintiff-Appellant,*<br><br>        *v.*<br><br>CHICAGO TRANSIT AUTHORITY, et al.,<br>        *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 17-cv-08508<br><br>Martha M. Pacold,<br>*Judge.* |

**O R D E R**

Annie Burton, an African-American woman over the age of 45, sued her former employer, the Chicago Transit Authority ("CTA") for discrimination based on her race, age, and disability and retaliation based on complaints of discrimination. Her amended complaint was dismissed for failure to state a claim, on the defendants' motion. On

---

[*] After examining the briefs and record, we have concluded that the appeal is appropriate for decision without oral argument. *See* FED. R. APP. P. 34(a)(2).

appeal, Burton contests only the denial of her two motions for the recruitment of pro bono counsel. Because Burton does not tell us why the rulings were erroneous or how she was prejudiced, we affirm.

We accept Burton's well-pleaded facts as true. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). Burton worked as a CTA bus driver from 2013 to 2017. In October 2016, a vehicle crashed into her bus. She was taken to the hospital and later asked a supervisor to drive her home. On the way, the supervisor locked the car doors and, instead of taking her straight home, drove her to meet another CTA employee. The complaint does not describe where they went or what happened, but four days later, the CTA suspended Burton for refusing to take a drug and alcohol test after the accident. Burton challenged the CTA's handling of these events through an internal process and by filing charges with state and federal agencies.

Then, in November 2017, Burton sued the CTA and four employees. She alleged that the defendants suspended her in retaliation for filing complaints and discriminated against her because of her race, age, and disability (arthritis). Shortly after the defendants moved to dismiss her complaint, Burton asked the district judge—the first of two who would preside over her case—to recruit an attorney for her. After a status hearing, the judge allowed Burton to amend her complaint, and the defendants again moved to dismiss. Once Burton filed her response brief, the judge denied the motion for attorney representation "without prejudice to renewal after the Court rules on defendants' motion to dismiss." He did not explain this ruling further.

The judge then granted the defendants' motion to dismiss without prejudice, explaining that Burton had failed to plausibly allege that the defendants took any action out of unlawful animus. The judge advised Burton to "describe in reasonable detail the events that gave rise to her contention that defendants discriminated against her." A few weeks later, Burton simultaneously filed her second amended complaint—repleading her claims and adding the allegation that the CTA unlawfully terminated her employment after she sued—and another motion for attorney representation. Again, the defendants moved to dismiss the complaint.

During briefing, the case was reassigned to the initial civil docket of a newly appointed district judge. After a status hearing, the judge denied Burton's pending motion for attorney representation "without prejudice to renewal after the Court rules on Defendants' motion to dismiss." The judge did not further explain her ruling. Months later, the judge dismissed Burton's amended complaint with prejudice. The

judge concluded that Burton did not plausibly connect any adverse employment actions to her race, age, disability, or protected activity.

On appeal, Burton does not argue that her second amended complaint stated a claim. Although we liberally construe pro se filings, a pro se appellant cannot simply ask us to vacate the judgment. FED. R. APP. P. 28(a)(8)(A); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). If the appellant does not articulate why the judgment was incorrect, any argument for vacating is waived. *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020); *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018).

The one argument we can discern does not pertain directly to the dismissal: Burton contends that she should have been provided with a pro bono attorney because she lacked the funds to hire one. Neither judge explained the denial of Burton's motions for an attorney, but we can infer from their summary orders that each wanted to see if Burton could state a claim before deciding whether it was worthwhile to recruit counsel. We typically expect more of an explanation than either judge gave here. *See Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 870–71 (7th Cir. 2019). But under the circumstances, we cannot say it was unreasonable for the judges to test the strength of the pleadings before expending the limited resources of the bar and bench to find counsel. *See McCaa v. Hamilton*, 959 F.3d 842, 845–46 (7th Cir. 2020); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Indeed, we have acknowledged the difficulty assessing the need for counsel in the early stages of a case. *See Mapes v. Indiana*, 932 F.3d 968, 971 (7th Cir. 2019); *Pickett*, 930 F.3d at 871.

In any event, on appeal Burton must show "a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Mejia v. Pfister*, 988 F.3d 415, 420 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc)). But Burton does not explain how an attorney could have set forth facts that would have given rise to federal claims—particularly when the facts needed to state a claim were presumably within Burton's personal knowledge, and the district judges instructed her on what was lacking.

AFFIRMED