NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2022*
Decided September 7, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-3022

| | |
|---|---|
| CODY MICHAEL ROBERTS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 20-cv-187-jdp |
| ANDREW JAMES JEZUIT, et al., *Defendants-Appellees*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

District courts have broad discretion in deciding whether to recruit counsel for pro se litigants. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). But in rare cases when the district court abuses that discretion, and the litigant was prejudiced by the lack of counsel, we must remand. *Id.* at 659–60. This is one of those cases. Wisconsin

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

inmate Cody Roberts lost his lawsuit at trial after the district court denied his motions to recruit counsel. Because the court failed to consider whether Roberts could handle the complexities of a trial, and Roberts establishes that the lack of counsel prejudiced what appears to be a strong claim of excessive force against a prison guard, we vacate the judgment with respect to that claim and remand for further proceedings.

One night in 2019, guards removed a belligerently drunk Roberts from his cell. Video footage shows that they cuffed his hands behind his back and strapped him into a chair, restricting any movement of his torso, arms, and legs. At one point, six guards in full protective gear surrounded Roberts. One of them, Andrew Jezuit, bent over to remove the straps so that Roberts could be searched, and Roberts tried unsuccessfully to head-butt Jezuit. In response, Jezuit lifted his head to look at Roberts. Then, as another guard moved to restrain Roberts's head, Jezuit lunged towards Roberts and drove his elbow into Roberts's head. Blood from two cuts spread across Roberts's forehead. The Wisconsin Department of Corrections fired Jezuit for using "excessive force" and "intentionally inflicting harm" on Roberts. Jezuit was also criminally charged for misconduct in public office, see WIS. STAT. 946.12(2), and obtained a deferred-prosecution agreement, in which he admitted to committing that crime.

Although Roberts did not remember anything from that night, he soon found out about the incident from the guards. One guard, Jason Koehn, asked how Roberts's ribs were, told Roberts to let him know when "round two" would be, and suggested that Roberts would get 20 more years in prison for the head-butt. Sheldon Best, Koehn's supervisor, told Koehn to stop talking to Roberts. Later that night, Koehn returned to Roberts's cell and smiled at him.

Roberts sued numerous prison officials under 42 U.S.C. § 1983, but after the district court screened the complaint and granted certain defendants' motion for summary judgment, only the claims against Jezuit, Koehn, and Best remained. Roberts alleged that Jezuit used excessive force, Koehn psychologically harassed him, and Best failed to intervene to prevent that harassment—all in violation of his rights under the Eighth Amendment.

About three months before trial, Roberts twice asked the district court to recruit an attorney for him. He argued that although his case was strong, he could not adequately present it because he has a learning disability, he lacked access to a computer, and prison staff were interfering with his letters to the jailhouse lawyer who had been assisting him. In denying the motions, the court explained that the case was

not too difficult for Roberts to manage on his own: his claims were not legally complex, he could explain the facts to the jury, and he had shown so far that he could manage the litigation. The court remarked that the other obstacles Roberts cited are common for pro se litigants and that he "should not need to conduct legal research to present his claims at trial." The court supplied the parties with its lengthy written trial-preparation order. As relevant here, the court explained when defendants, but not plaintiffs, can move for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The case proceeded to a two-day jury trial.

After Roberts presented his case-in-chief, the district court granted the defendants' joint Rule 50(a) motion only with respect to Best. In explaining why Jezuit was not entitled to judgment as a matter of law, the court stated that "the strike to the head [was] not designed to alleviate the danger of headbutting" like "restraining the head would have been." (The court had also remarked earlier that it was "utterly beyond dispute" that Jezuit intended to strike Roberts.) The jury returned a verdict in favor of Jezuit and Koehn, and Roberts did not move for any relief.

On appeal, Roberts argues that the district court abused its discretion when it denied his motions for recruitment of counsel. He contends that his lack of representation caused problems at trial because he could not "comprehend as a regular person would."

Pro se litigants lack a constitutional or statutory right to recruited counsel in federal civil litigation. *Pruitt*, 503 F.3d at 649. The decision whether to recruit counsel under 28 U.S.C. § 1951(e)(1) is left to the district court's broad discretion. *Id.* at 654. But because the number of available pro bono lawyers pales in comparison to the countless requests for counsel that courts receive each day, district courts "are placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Mindful of the hard choices district courts face, "we have resisted laying down categorical rules" requiring counsel for certain stages of litigation, such as trial. *Pruitt*, 503 F.3d at 656. Rather, when deciding whether to recruit counsel, district courts must ask if "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655.

Then, in reviewing a district court's decision, we ask "not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts

supported by the record." *Id.* at 658. In some unusual cases, such as this one, we must remand because the district court overlooked an important consideration. In doing so, we stress that our holding is narrow and creates no new obligations for district courts, nor any rule that trials necessitate recruited counsel.

We first recognize that Roberts's excessive force claim was uncharacteristically strong. A video recording shows that Jezuit elbowed Roberts while he was strapped into a chair, handcuffed, and surrounded by other guards. The Wisconsin Department of Corrections also fired Jezuit after determining that the elbow strike constituted excessive force. And Jezuit even conceded that he committed the Wisconsin crime of misconduct in public office—a crime he presumably would not be guilty of if, as he contended during this litigation, he struck Roberts reflexively. We recently clarified that district courts may consider the strength of a pro se litigant's case when deciding whether to recruit counsel. *See Watts v. Kidman*, 42 F.4th 755, 761 (7th Cir. 2022). Here, considering the strength of Roberts's excessive-force claim would have tipped the scales in favor of recruiting counsel for him.

Turning to the inquiry we set forth in *Pruitt*, we are not confident that the district court fully considered whether Roberts could handle an event most civil litigants never reach: a jury trial. We emphasize again that pro se litigants are not entitled to counsel every time they reach trial. *Pruitt*, 503 F.3d at 649. But as we explained in *Walker v. Price*, courts must at least consider whether litigants can manage a trial. 900 F.3d 933, 938–39 (7th Cir. 2018). As in *Walker*, the court here considered only the simplicity of the plaintiff's claims and not his ability to carry out the many complicated tasks associated with trial. *See id*. Even in a straightforward case, a trial presents unique challenges because "conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out." *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015). For that reason, the district court's assurance that Roberts need not conduct research was not quite accurate. True, he knew the facts of the case, but just like the pro se litigant in *Walker*, he also needed some familiarity with how to establish the elements of his claims, and with the rules of evidence and procedure. *See Walker*, 900 F.3d at 939.

The district court also failed to consider that, to succeed on his excessive-force claim under the Eighth Amendment (which governs when the alleged victim is a prisoner), Roberts had to prove that Jezuit intended to cause him pain. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Unlike a claim under the Fourth Amendment, which is measured by an objective standard, Roberts's

claim included a subjective inquiry into Jezuit's state of mind. *See Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015). And we have observed that prisoners may be ill-equipped to litigate claims involving a defendant's state of mind because "even a relatively sophisticated litigant may find it difficult to identify and present the right type of evidence." *James v. Eli*, 889 F.3d 320, 327–28 (7th Cir. 2018) (quoting *Pruitt*, 503 F.3d at 664 (Rovner, J., concurring)).

We have held that the Fourth Amendment applies to prisoners in limited contexts, *see Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020) (en banc), but we have never held that the Fourth Amendment applies to excessive-force claims made by prisoners and thus avoids the need to prove any defendant's state of mind. Whether to extend *Henry* is a question on which counsel could have provided assistance. It is evident that Roberts could not handle that issue by himself. Nor was Roberts equipped to contend that Jezuit's criminal conviction entitled him to prevail, without the need for trial, on a theory of claim or issue preclusion (res judicata or collateral estoppel).

Further, the district court should have addressed whether Roberts's performance in earlier stages demonstrated the capabilities he needed at trial, especially given his lack of access to legal help in prison. We reiterated in *Walker* that courts must consider a plaintiff's ability to prosecute a case independent of assistance he previously received from fellow inmates. 900 F.3d at 940–41; *McCaa v. Hamilton*, 893 F.3d 1027, 1033 (7th Cir. 2018). But here, informed that Roberts's access to assistance within the prison had been cut off, the court relied on Roberts's performance at the pretrial stage without explaining how he could continue successfully on his own at trial.

Roberts is entitled to relief now only if he was prejudiced by the lack of counsel. *See Pruitt*, 503 F.3d at 659. He need not demonstrate that he would have won his case, just that counsel could have strengthened the presentation of his case in a manner "reasonably likely to alter the outcome." *Id.* at 660. In his brief, Roberts lists examples of prejudice (he says they are non-exhaustive) that are by themselves unpersuasive, but his overall contention that he was prejudiced has merit, at least regarding the excessive-force claim against Jezuit.

First, given the strength of Roberts's excessive-force claim, an attorney would have been reasonably likely to file a compelling motion for summary judgment. *See* FED. R. CIV. P. 56(a). That lawyer would have been armed with clear video evidence of Jezuit striking a restrained Roberts, the Wisconsin Department of Corrections' determination that Jezuit committed excessive force, and Jezuit's admission that he committed

criminal misconduct. The lawyer also would have considered whether any issue decided in Jezuit's criminal prosecution had preclusive effect in this case.

Second, for the same reason, counsel representing Roberts would have been likely to make and succeed on a motion for judgment as a matter of law during trial. *See* FED. R. CIV. P. 50(a), 50(b)(3). As the district court instructed the jury, Roberts had to show that Jezuit (1) intentionally used force on him, (2) for the purpose of harming him and not in a good faith effort to maintain or restore order, and (3) caused injury. Each element was almost surely met. The district court opined that the first element was "utterly beyond dispute" (after the defense argued that the claim turned on that element). The court later declined to rule for Jezuit under Rule 50 based on its conclusion that Jezuit did not strike Roberts to restore order. And the third element would be satisfied by proving the use of force sufficient to cause pain, which could be inferred from the power of the strike and the blood covering Roberts's forehead. But Roberts likely was unaware that he could move for judgment as a matter of law; the court told him he need not conduct legal research, and the judge referred to such motions only by defendants. Further, as the appellees point out, by failing to make that motion, Roberts waived an appellate challenge to the sufficiency of the evidence. *See S.E.C. v. Yang*, 795 F.3d 674, 680 (7th Cir. 2015).

Third, Roberts's presentation at trial was sorely lacking. *See Pruitt*, 503 F.3d at 661. That counsel would have performed better is not enough to show prejudice. *Mejia*, 988 F.3d at 420. Our review of the trial record, however, persuades us that Roberts's pro se status hampered him considerably. Not only was Roberts disorganized and often redirected by the court, but he also failed to question Jezuit on key points. He did not, for example, challenge Jezuit's testimony that the strike was an unintentional reflex even though Jezuit took the time to lift his head and look at Roberts before elbowing him. Nor did Roberts probe how Jezuit could have intended to restore order with the blow when Roberts was strapped into a chair and surrounded by five other guards, one of whom was moving to restrain his head. *See Walker*, 900 F.3d at 941 (plaintiff prejudiced by poor cross-examinations). And, in his extremely short closing argument, Roberts simply described the challenges of representing himself and did not once mention his claim against Jezuit. *See Pruitt*, 503 F.3d at 661 (plaintiff prejudiced by poor closing argument).

On the other hand, we cannot see any way in which the denial of Roberts's motions for counsel prejudiced his substantially weaker claims against Koehn and Best.

We therefore VACATE the judgment in favor of Jezuit and REMAND for proceedings consistent with this opinion; the balance of the judgment is AFFIRMED.