In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2472

CARLOS A. WILLIAMS,

*Plaintiff-Appellant,*

*v.*

LOUIS DEJOY, Postmaster General,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-08613 — **Sara L. Ellis**, *Judge.*

ARGUED NOVEMBER 7, 2023 — DECIDED DECEMBER 15, 2023

Before EASTERBROOK, WOOD, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Carlos Williams alleges his former employer, the United States Postal Service, fired him for discriminatory reasons. Of his several theories, he focuses on retaliation: he worked there for seventeen years, and throughout that time he filed complaints over his and other postal workers' treatment. His bosses were unhappy. Even so, the Postal Service did not fire him until 2014, when he failed to appear at work for months. This appeal asks us to overturn a

jury verdict that rejected Williams's discrimination claims. We affirm.

## I. Background

### A. Factual History

Plaintiff Carlos Williams worked for the United States Postal Service ("USPS") from 1997 to 2014. At all relevant times, he occupied a letter carrier post in the Glen Ellyn Post Office. Two managers, Connie Principe and John Walsh, supervised him there. Williams's protected characteristics are also relevant to this employment discrimination suit: he is a Black man who identifies as a Choctaw and a Moor, and he was born in 1972—placing him in his early forties when the alleged discrimination took place.

During his tenure with USPS, Williams showed a keen interest in labor and employment law. This often manifested in legal actions against USPS management. Williams filed claims on his own behalf, variously alleging employment discrimination, retaliation, and violations of holiday pay policies. And through an organization called the "No Harassment Foundation," he aided others with their claims. Altogether, he has filed at least fifteen complaints with the Equal Employment Opportunity Commission ("EEOC") about his managers' conduct.

This appeal touches on just two of Williams's quarrels with USPS. Each pertains to a firing: one in 2013, and one in 2014.

*The 2013 Firing:* On May 24, 2013, Williams filled in for another letter carrier. Along his route, a young woman approached his truck to pick up her mail. She was eighteen years old. Instead of her usual postwoman, she encountered

Williams, who started asking her questions about her age and her plans for after high school. The interaction soon crossed a line. When she mentioned her interest in the fashion industry, Williams offered to let her model for his clothing line. He called it "Clexsy," informing her it was a mashup of the words "classy" and "sexy." He then went two steps further by offering to take her for a ride in his new Volvo and adding ominously that she would not "have to do anything with him." Williams also handed her a slip of paper with his name and phone number. Her response was to retreat inside her family home and close and lock the door. Williams came back later, too. Apparently distracted, he had forgotten to deliver a package to the family. Her father accepted the delivery; the young woman told her parents what happened.

The next day, her mother called the post office. Williams's manager, Connie Principe, advised her to call the police if the daughter had felt threatened or harassed. So she did. Williams felt consequences soon after, when USPS put him on emergency placement—off-duty status without pay—five days after the incident. He remained in that placement for almost a month. Then USPS brought him back.

But on Williams's second day back on the job, a report from USPS's Office of the Inspector General concluded that Williams's conduct reflected poorly on his employer. That finding led to a notice of removal from employment on July 11, which in turn kicked off the process to fire Williams. Williams responded by filing union grievances. After almost a year, these grievances led to an arbitration on June 4, 2014. There, Williams settled the grievances on successful terms: Williams would return to work on June 6, and USPS would

give him half of the backpay for his eleven months off the job. Williams, however, did not return on June 6.

*The 2014 Firing:* Williams did not personally sign the settlement immediately: a union representative did so for him. It is for that reason, he says, that he did not come to work on June 6—he did not know about the start date. USPS sent Williams letters saying his start date was either June 6 or June 9—the parties disagree on that date—and urging him to return to work. Williams never showed up on June 9, or any date thereafter. Instead, he called into an automated system to request two weeks of sick leave; these calls repeated every two weeks. Williams never contacted his supervisor, and no medical documents ever accompanied the requests. And so USPS did not authorize any leave.

On July 5, USPS designated Williams absent without leave, or AWOL. Nine days later, they sent him a notice of removal charging him as AWOL—the parties call this the "charging document." A month later, on August 18, USPS separated Williams from his employment. A letter dated August 29 informed Williams of that fact.

## B. Procedural History

Williams filed a complaint with the EEOC, which the agency dismissed on USPS's motion for summary judgment. Williams tried again with another complaint—he met the same fate. Then he retained a lawyer and brought this suit against USPS, asserting Title VII claims rooted in both the 2013 and 2014 firings. In particular, he alleged that USPS discriminated against him on the bases of race, color, sex, age, national origin, and association with a disabled person (his wife suffered from and ultimately succumbed to cancer

during these events). He also alleged that USPS had retaliated against him for his No Harassment Foundation activities.

The district court narrowed the suit's scope after USPS moved for summary judgment. Partially granting USPS's motion, the district court cut things down to only the 2014 firing and only the claims alleging retaliation and discrimination on the bases of race, gender, and national origin.

Williams's retained counsel thereafter moved to withdraw. Williams asked the district court to recruit him a new lawyer, and it did. *See* 28 U.S.C. § 1915(e)(1). When that lawyer explained that he was unqualified to litigate employment discrimination claims, the court recruited an experienced employment lawyer, who agreed to take up the case. She too withdrew after Williams pressed her to amend the complaint and add certain far-fetched legal theories of his own design. The court declined to recruit a third lawyer.

And so Williams carried on with the case pro se. In the leadup to trial, plaintiff Williams filed a self-styled Motion to Dismiss, apparently trying to dismiss the "case" against him that had led to his firing six years earlier. The district court construed this as a motion for reinstatement to duty and denied it. Next Williams moved to reopen discovery so he could re-depose certain witnesses and develop a record for his new legal theories. The court also denied this motion. With trial looming, the parties then moved *in limine* to admit or exclude certain evidence. The district court granted these motions in part and denied them in part. The rulings (under Federal Rule of Evidence 403) aimed to keep the core evidence in the case while excising prejudicial, confusing, and dilatory evidence. With that goal in mind, the district court forbade the government from raising the 2013 incident and limited Williams's

retaliation evidence to the bare procedural history of each
complaint he had filed.

Williams then proceeded to trial pro se. Though he was
able to make an opening statement and examine witnesses, he
did need occasional help from the court. Trial lasted five days,
and the jury rendered a swift verdict for USPS. This appeal
followed.

## II. Discussion

Williams raises a surfeit of issues on appeal. The first batch
concerns his own legal ideas—strange double jeopardy and
due process theories, plus the peculiar motion to dismiss.
Next we turn to the district court's choice not to recruit a third
lawyer, and then to the motions *in limine*. We then address
Williams's grievances with the district court's trial manage-
ment.

### A. Substantive Issues

Williams first advances a "double jeopardy" argument,
whose novelty stems from its lack of merit. Recall that USPS
had suspended him initially, then brought him back. Only af-
ter the Office of the Inspector General issued its damning re-
port did the Glen Ellyn branch initiate his removal. Citing old
administrative decisions from the Merit Systems Protection
Board, Williams urges us to hold that the removal proceed-
ings illegally punished him a second time for his 2013 con-
duct: first the suspension, then the firing. We are not bound
by those administrative precedents. Nor are they relevant to
this employment discrimination claim—Williams never ties
the disciplinary two-step to any protected characteristic. It
does not even seem to be unusual for USPS to discipline a
postal worker this way. *See, e.g.*, *Matthews v. Milwaukee Area*

*Local Postal Workers Union*, 495 F.3d 438, 439–40 (7th Cir. 2007) (postal worker suspended, then fired for the same conduct).

Next, he suggests that his ultimate firing deprived him of due process, since he had a property right in his employment. Williams, however, never pleaded a due process claim. "The district court was not required to address a claim or theory that plaintiff did not assert." *Gates v. Board of Educ. of the City of Chicago*, 916 F.3d 631, 641 (7th Cir. 2019). Nor are we.

Williams's third challenge is that the district court construed his self-styled "motion to dismiss" as a motion for reinstatement to duty status (which it denied). But district courts can "recharacterize the motion in order to place it within a different legal category" to "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381–82 (2003). Just so here. Williams also contends that the district court had to wait for a response from USPS before ruling on his motion. District courts, however, have "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," including by denying meritless motions without awaiting a response. *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) Further, the District Court's Local Rules belie Williams's argument: "Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing." N.D. Ill. LR 78.3. The district court handled the "motion to dismiss" appropriately and did not err.

**B. Recruitment of Counsel**

We turn now to the district court's choice not to recruit a third lawyer for Williams. The first time Williams asked for recruited counsel, the district court granted his request. But that counsel withdrew, citing inexperience with employment discrimination cases. Then the district court recruited an experienced employment lawyer, who accepted the assignment. But she too ultimately withdrew after representing Williams for six months. This time, the district court denied Williams's request to recruit counsel. Williams maintains it was a mistake not to recruit someone new, given his claims' complexity and novelty and his proximity to trial. He also argues he was prejudiced, suggesting an attorney's help would have shortened the odds of a winning verdict.

Williams, like other litigants, enjoys no right to counsel in civil cases. *McCaa v. Hamilton*, 893 F.3d 1027, 1030 (7th Cir. 2018). Still, he and others "may ask the district court to request an attorney to represent the litigant." *Id.* (citing 28 U.S.C. § 1915(e)(1)). In many cases, a pro se litigant can expect that a court's decision whether to recruit counsel will follow a set process, which comprises two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Here, the district court eschewed this analysis in declining to appoint Williams a third attorney.

Williams's arguments roughly map onto the *Pruitt* questions. As to the first question, he argues that he tried to secure counsel by asking law school clinics and law firms for help. On the second, he contends that his case was particularly

complex, especially if the court embraced his homegrown double jeopardy and due process arguments. That complexity, he argues, called for professional help.

Williams misses that this is no ordinary case. His arguments might go a long way to persuade a district court that it should appoint *one* lawyer. Now, though, he is asking for a third after making unreasonable demands on the second. We have been clear: "The valuable help of volunteer lawyers is a limited resource." *Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 937 (7th Cir. 2020) (quoting *Dupree v. Hardy*, 859 F.3d 458, 462–63 (7th Cir. 2017)). "The courts must be careful stewards of this limited resource." *Id.* at 934. When pro bono counsel has "invested many hours of valuable time in the case before moving to withdraw because the client would not cooperate," a wise court will economize with its scarce pool of pro bono volunteers. *Id.*

Here, the district court heeded our warning in *Cartwright* and deployed its resources judiciously. Williams did not cooperate with his pro bono attorney, who boasted not just experience but expertise in employment discrimination. That attorney did not disclose her specific reasons for moving to withdraw—rather, minding her professional obligations, she adverted only to "a substantial and fundamental disagreement on how to proceed with the litigation." Williams fleshed out the details. In resisting her motion to withdraw, Williams explained that he had asked the lawyer to amend the pleadings to include his meritless due process and double jeopardy claims. The district court rightly chose not to expose another lawyer to the reputational risks Williams's requests would, if granted, have posed.

Besides, the decision not to recruit counsel for Williams worked no prejudice. Even in those cases where *Pruitt* does apply, and a court skips the two-step inquiry, "we only reverse based on that error if the plaintiff shows prejudice." *McCaa*, 893 F.3d at 1031. Williams cannot. The relevant question is whether "there is a reasonable likelihood that the presence of counsel would have altered the outcome." *Pruitt*, 503 F.3d at 660. On these facts, even a skilled lawyer would struggle to make a case. The USPS's defense was that it fired Williams for not showing up to work for months—and the undisputed evidence proved that he had not showed up to work for months. Williams fails to show prejudice: these flaws would sink his case no matter who steered the ship.

When a district court has already recruited a capable attorney, and a pro se litigant undermines their professional efforts, the district court need not undertake another *Pruitt* inquiry. Far from erring, the district court showed Williams patience and solicitude, recruiting one lawyer and then another.

## C. Evidentiary Rulings

Next, Williams contends that the district court mishandled various pretrial evidentiary rulings. He appeals three of the district court's rulings on motions *in limine*. We review for abuse of discretion. *Downing v. Abbott Lab'ys*, 48 F.4th 793, 804 (7th Cir. 2022).

*First*, Williams moved to admit the substance of his past EEOC activity into evidence. Williams, remember, had filed several complaints on behalf of other postal workers through the No Harassment Foundation. He moved similarly to admit the complaints from prior proceedings where he represented himself. The district court granted these motions in part and

denied them in part, concluding that Williams could tell the jury only that he had filed each complaint, when he had filed it, and how it had turned out. The court reasoned that those facts alone were relevant to Williams's retaliation claims. Anything else would be substantially more confusing for the jury or more prejudicial than probative, so Federal Rule of Evidence 403 barred its use.

Now on appeal, Williams urges us to reverse, insisting that he needed to admit the substance of other employees' complaints to tie his firing to his involvement with the No Harassment Foundation. Put another way, he thought the substance would help demonstrate USPS's motive to retaliate. Our caselaw demands more. "[E]vidence of discrimination and retaliation against other employees" comes with a "high likelihood of juror confusion and inherent delay" that "outweigh[s] what little value could be gleaned from it." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 443–44 (7th Cir. 2009). That goes double in a situation like this one, with numerous claims over several years. The district court acted well within its discretion in excluding this evidence.

Williams's own past filings fare no better. His claim alleged that higher-ups retaliated for his filing complaints—asking jurors to assess the merits of those complaints would cause confusion and distract from that core issue. Once again, the district court acted well within its discretion.

*Second*, Williams moved to admit paperwork showing that USPS agreed to 50% backpay for the time he had been away from work following the 2013 firing. The district court rejected the motion, holding that this paperwork was irrelevant: it went to his 2013 firing, and the only claims at trial focused on the 2014 firing.

Williams now argues that the documents are relevant to any issue involving the arbitration proceedings. But those proceedings bear little relationship to the 2014 firing and therefore to his claims at trial. They are relevant only in that they led to his assignment to return to work on June 6 (or June 9). The backpay agreement is another matter entirely. Whatever monies USPS owed could not have changed Williams's scheduled start date.

*Third*, Williams moved to exclude the USPS charging document establishing he had gone AWOL as of June 6, 2014. The district court denied his request, holding that the evidence was central to USPS's defense and Williams remained free to argue finer points about the precise date he was due back to work.

To exclude relevant evidence, Federal Rule of Evidence 403 requires that its probative value be substantially outweighed by a danger of unfair prejudice, confusion, or delay. The charging document is highly relevant here. Standing alone, it proved (1) that Williams was due to return to work, and (2) that Williams was on notice of that fact. Given that the probative value was so great, it is hard to imagine exclusion under Rule 403. Still worse for Williams, the prejudicial effect was minimal. Even if the jury credited the document's June 6 date rather than Williams's arguments for June 9, Williams never returned to work. That three-day difference hardly matters.

Williams tacks on an argument that the district court should have reopened discovery and let him re-depose witnesses, since his initial (retained) lawyer had refused to develop a record on Williams's due process and double jeopardy arguments. Here, too, we review for abuse of discretion.

*Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1139 (7th Cir. 2023). There was none. Williams is bound by his counsel's decisions because lawyers' "actions are imputed to their clients." *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007). He cannot be heard to complain that counsel declined to pursue his pet legal theories.

## D. Trial-Management Decisions

Last, Williams lodges a string of thirteen complaints over the district court's trial management. None exceeds thirty words. All these, as "perfunctory and undeveloped arguments … are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022). Even if they were not waived, they misinterpret the record to try and twist the district court's efforts to help Williams into inklings of bias. Not one has merit.

## III. Conclusion

The judgment of the district court is

AFFIRMED.